## Geiser *v.* Pittsburg Railways Company, Appellant.

*Negligence—Street railways—Car leaving track—Death of bystander.*

In an action against a street railway company to recover damages for death, the case is for the jury where the evidence shows that the deceased at the time of the accident was a bystander near a switch; that the forward trucks of a car proceeded upon the main track at the switch, while the rear trucks took the switch; that in consequence the rear end of the car flew around, struck a telegraph pole, which broke, and in falling killed the deceased; and that according to the testimony of a witness for plaintiff the switch point was worn flat.

Argued Oct. 26, 1908. Appeal, No. 185, Oct. T., 1908, by defendant, from judgment of C. P. No. 3, Allegheny Co., Nov. Term, 1905, No. 348, on verdict for plaintiff in case of Arnold Geiser v. Pittsburg Railways Company. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, ELKIN and STEWART, JJ. Affirmed.

Trespass to recover damages for death of plaintiff's son. Before EVANS, J.

At the trial the jury returned a verdict for plaintiff for $1,825. On a motion for judgment non obstante veredicto EVANS, J., filed the following opinion:

On the trial of the case it appeared that on August 30, 1905, between eleven and twelve o'clock in the morning, the son of the plaintiff was standing at the corner of Plummer and Forty-seventh streets, in the city of Pittsburg. The defend-

ant company has two tracks upon Plummer street, and at the corner of Forty-seventh street has a car barn with a switch from their main tracks into the barn.   On the morning in question a car was proceeding along Plummer street, and when the car came to the switch the front trucks either took the switch, and the hind trucks failed to take it and proceeded along the main track, or the reverse, the front trucks proceeded on the main track, and the rear trucks took the switch, according to whether the testimony of the plaintiff or the defendant states the facts.   The rear end of the car flew around, struck a telegraph pole near where young Geiser was standing, broke the pole, and in falling it struck Geiser and killed him.   The allegation of negligence was a defect in the switch. Frank Gottschalk, a witness produced by the plaintiff, testified as to the condition of the switch.   After testifying that some two weeks before the accident he was passing along there, and the wheel of his wagon was caught in the switch, he testified : " Well, as my wagon was caught I got a bar, and the switch was worn out flat.   Q. What part of the switch ? A. The end of it.   Q. The point ?   A. Yes, sir.   Q. And for what distance back was it worn flat, how far from the point back did the flatness extend ?   A. I don't know how long that point was, it was worn back quite a bit.   Q. Show us with your hands how far ?   A. I would say about that far (indicating)."

Mr. Challener, for the defendant : " Q. Well, you indicate about four inches ? "

Mr. Marshall, for the plaintiff : Six inches.

Mr. Marshall : " Q. For that distance, between four and five inches back, you say the point of the switch was worn flat ? A. Yes, sir.   Q. How often did you drive past there from the time that you particularly noticed the condition of this switch up until the time of the accident ?  A. Two months.   Q. How often did you drive past there during that two months ? A. Every day   Q. Now had there been any change made in that switch from the time you got your wagon caught in there up until the day of this accident ?   A. No, sir.   Q. It was still in the same condition ?   A. Yes, sir."

Mr. Challener : " Q. Did you notice whether or not the switch was thrown to allow a car to go in on a switch, or

thrown so as to allow a car to go along the main track at that time? A. Why, it was for the straight track."

Charles Lentz, a witness produced by the plaintiff, testified as follows: " Q. You are a stepson of Arnold Geiser, the plaintiff in this case? A. Yes, sir. Q. Did you, on the day of this accident to your half-brother, go and examine this switch? A. I did. Q. Did you examine the point of that switch? A. Yes, sir; I did, I looked at it. Q. What was the condition of the point of that switch? A. It was worn off at the top, it was thicker at the bottom than it was at the top, the back was worn off. Q. How far was it worn off at the top? A. I guess it must have been from four to six inches at least. Q. Did you examine the switch back where it was attached to the rail, to see whether it was loose or not? A. It was tight all right. Q. When did you examine it? A. I guess it was about an hour and a half afterwards that I came along there. Q. Had you heard of the accident? A. Yes, sir; the minister told me."

With the exception of the testimony of Gottschalk that he had some two weeks prior to the accident gotten his wheel fastened in this switch, the above is the only testimony on the part of the plaintiff as to any defective condition of the switch. He got the wheel of his wagon fastened while driving in an opposite direction from that in which this car was going, and his wheel was fastened between the switch and rail of the main track. The question presented is : does the testimony of the plaintiff that the switch point was worn flat justify the jury in drawing the inference that the accident to the car was occasioned by that condition of the switch point, and was the condition of the switch point such as to impute negligence to the defendant company in permitting it to remain in that condition? It is still the rule of law that the happening of the accident, in cases such as this one, is not evidence of itself of negligence, but the quantum of proof necessary to establish negligence, under certain circumstances, need be very slight. In Shearman and Redfield on Negligence, secs. 59 and 60, quoted with approval in the case of Shafer *v.* Lacock et al., 168 Pa. 497, this rule is laid down: " The accident, the injury, and the circumstances under which they occurred are, in some cases, sufficient to raise a presumption of negligence, and thus

cast on the defendant the burden of establishing his freedom from fault. When a thing which causes injury is shown to be under the management of the defendant, and the accident is such as in the ordinary course of things does not happen, if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendant, that the accident arose from a want of care."

Applying that principle to the case at bar, we have the fact that it rarely happens that the forward trucks of the car will proceed upon the main track, and the rear trucks take the switch. If some obstruction has been negligently placed upon the track, causing the car to jump from the track upon which it was proceeding, that would naturally have affected the front truck as readily as the rear. No ordinary condition of the tracks of the defendant company explains this accident. As we have suggested, no sudden emergency of something upon the track would explain why one pair of trucks of the car proceeded in its regular way, and the other set of trucks did not. In the case of Matthews v. Pittsburg & L. E. Railroad Company, 18 Pa. Superior Ct. 10, Mr. Justice ORLADY, after citing the principle quoted from Shearman and Redfield, sec. 59, says: " While the burden of proof is on the plaintiff in such cases, it is not required that the facts be established by direct or positive proof; like any other fact, it may be established by circumstantial evidence; and on account of the great difficulty in proving negligence in such cases any proper evidence from which negligence may be inferred is sufficient to throw the burden on the defendant. There may be no direct proofs of negligence, yet the way in which an injury is done may be such that negligence is the most probable hypothesis by which it can be explained; and when this is so the defendant must disprove negligence by showing that he exercised care."

The case of Small v. Pittsburg Railways Company, 216 Pa. 584, we do not think rules this case. In that case the plaintiff's testimony clearly shows that the accident was caused by the icy condition of the tracks, a condition which was not under the control of the defendant company. We are of the opinion that there was sufficient evidence of negligence here to take the case to the jury. Let judgment be entered upon the verdict.

*Error assigned* was in entering judgment on the verdict.

*Wm. A. Challener*, with him *Clarence Burleigh* and *James C. Gray*, for appellant.

*Rody P. Marshall*, with him *Thomas M. Marshall*, for appellee.

PER CURIAM, January 4, 1909 :
The judgment is affirmed on the opinion of the court below.