# Fitzsimmons *v.* Philadelphia Rapid Transit Company, Appellant.

*Negligence—Street railways—Broken electric wire—Case for jury.*

In an action by a woman against a street railway company to recover damages for personal injuries caused by her being struck on the head by a broken overhead electric trolley feed wire, the case is for the jury where an electrical expert of large practical experience called by the plaintiff, testifies that the wire was in a deteriorated condition, and that its fall had been due to lack of proper repairs, lack of maintenance of worn parts, poor construction at the start, or the burning of the wire by use of trolley wheels that did not make proper contact, and there is no proof on the part of the defendant explaining the break or fall of the wire, or that the wire in question had been recently inspected.

Argued Oct. 10, 1913.   Appeals, Nos. 42 and 43, Oct. Term, 1913, by defendant, from judgment of C. P. No. 1, Phila. Co., June T., 1909, No. 4,903, on verdict for plaintiffs in case of Catherine Fitzsimmons and Edward Fitzsimmons, her husband, *v.* Philadelphia Rapid Transit Company.   Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD and PORTER, JJ.   Affirmed.

Trespass to recover damages for personal injuries. Before BRÉGY, P. J.

The facts are stated in the opinion of the Superior Court.

Verdict and judgment for Catherine Fitzsimmons for $750, and for Edward Fitzsimmons for $175.   Defendant appealed.

*Error assigned* was in refusing binding instructions for defendant.

*Sydney Young,* for appellant.—The doctrine of res ipsa loquitur does not apply in this case: P. & R. R. Co. v. Sohertle, 97 Pa. 450; Alexander v. Penna. Water Co., 201 Pa. 252; Trout v. Turnpike Road Co., 216 Pa.

119; Salerno v. Ry. Co., 46 Pa. Superior Ct. 243; East End Oil Co. v. Torpedo, 190 Pa. 350; Lanning v. Rys. Co., 229 Pa. 575; Kepner, v. Traction Co., 183 Pa. 24; Patterson Coal & Supply Co. v. Pittsburg Rys. Co., 37 Pa. Superior Ct. 212; Zercher v. Phila. Rapid Transit Co., 50 Pa. Superior Ct. 324.

*Michael J. Geraghty,* for appellees.—The case was for the jury: St. Clair v. Edison Electric Light Co., 38 Pa. Superior Ct. 228; Patterson Coal & Supply Co. v. Rys. Co., 37 Pa. Superior Ct. 212; Millen v. Wilkes-Barre Gas & Elec. Co., 38 Pa. Superior Ct. 3; Koelsch v. Philadelphia Co., 152 Pa. 355; Fitzgerald v. Edison Electric Illuminating Co., 200 Pa. 540; Todd v. Traction Co., 192 Pa. 587.

OPINION BY ORLADY, J., March 12, 1914:

Catherine Fitzsimmons, one of the plaintiffs, and wife of the other, while on a public street with the intention of taking passage on one of the appellant's street cars, on January 4, 1909, was suddenly struck on the head by an overhead electric trolley feed wire, which broke at its right-angled intersection with another street car line. The happening of the accident and the serious character of her injuries were not in dispute. The sole request for instruction by the appellant was that "under all the evidence in the case, the verdict should be for the defendant," which was refused by the court and a verdict was returned in the plaintiff's favor, and this, the court refused to set aside and enter a judgment non obstante veredicto for the defendant.

The allegation of negligence in the plaintiff's statement of claim was that the defendant had "failed to use diligence, skill and care, and keep in repair, good order and condition the said overhead electric wires." On the trial, the plaintiffs did not rely on the mere happening of the accident, but adduced substantive proof to determine the defendant's negligence. The principal wit-

ness was William A. Smethhurst, who had been in the electrical construction business for twenty years, and who put up this overhead wiring in the winter of 1895; he had seen it frequently in the intervening years, and in the spring of 1912, with two of his own linemen, made a personal examination of the wiring, by putting up a ladder, testing and measuring the wire, which he identified as of the same kind and diameter that had been used in the original construction. He found evidence of repairs at crossovers, splices and span wires, and that new insulators had been put in; the wire was greatly worn by the trolley wheels running on it. On cross-examination he testified: "Q. But you could not be sure that was the wire that was put up in 1895— how could you be sure of it? A. I think I could say so because I know how it was put up. The traction company would not have put up a similar wire. Q. A similar wire could have been placed there four or five years before your examination in 1912 and you not know it? A. That is very possible, but they would not put up the same size because it is not good practice. Q. And do you know what kind of wire they put up in various places? A. Yes, I do. Q. You have not put up any for them? A. Yes, sir. Q. You don't know what kind of wire they used in 1909? A. Yes, sir. Q. On all the roads? A. All the new roads and all the renewals."

He gave as the causes of deterioration of the overhead trolley wires, extreme cold weather, wear or crystalization, high winds, very low or zero temperature; and when asked to ascribe a cause of a trolley wire suddenly falling, after three preceding days of favorable weather when the temperature ranged from forty to fifty-four degrees and without any snow or ice or sleet falling, replied, "I should say, it must have been due to lack of proper repairs, lack of maintenance of worn parts, poor construction at the start or the burning of the wire by use of trolley wheels that did not make proper contact. The burned wire gets thinner as it is burnt off and finally

burns through and the two ends fall to the street. This could be prevented by replacing the worn wire before it gets dangerously thin." It was conceded that the wire used in original construction was "one naught" wire, and that it had been inspected twice a year by the defendant's employees "riding over the line on a tower wagon and examining the wire by view with the eye," and that in new construction of like work a different or four-naught wire is always used. The defendant did not offer any explanation of the break or fall of the wire or prove that this particular wire had been recently inspected. It was further shown, that overhead electric trolley wires frequently fall, and that the defendant maintains a regular force of repair men and wagons to meet such emergency calls, and that while one-naught wire may last only a year, it has been known to last for fifteen years, and that a four-naught wire is now used; the one naught wire not being used in new work because it is considered too small. In a number of the material facts testified to by Smethhurst he was not contradicted, and the importance of his testimony was specially called to the attention of the jury by the trial judge, viz. "Now is there anything in the manner of Mr. Smethhurst in testifying that shows bias, or that he is trying to do more than he ought to do; was he showing any interest or partizanship, and if there is anything in it to make you think it is improper you ought to discount what he says. In addition to that he is contradicted by the defendant who says, we put up the wire since then, by people who say they constructed it. Now when I say Mr. Smethhurst is contradicted by them, I do it because I think he is the man about whom the whole case revolves. It would be equally true to say that he contradicts them, because he testifies to one thing and they testify to another. If you are satisfied that the company changed the wire and put up the proper kind of wire, constructed it properly and kept it repaired, there was no carelessness

shown on the part of the company, and the verdict should be for the defendant. If your honest judgment is that the company allowed a worn-out wire to stay there, it would be your duty to render a verdict for the plaintiff."

After a careful examination of this record, we cannot say as a matter of law that the testimony of the witness Smethhurst, supported as he was in some degree by Prof. Herring, was not sufficient to support the verdict. He was an expert of large practical experience, and if believed by the jury his testimony reasonably showed the cause of the accident to be a careless supervision of this worn trolley wire.

There are cases in which a fair presumption or inference of negligence arises from the circumstances under which the injury occurred, and this we think is one of them. If this accident was capable of an explanation which repelled an inference that it resulted from the defendant's negligence, they could and ought to have made it, because they were in a position to do so, while from the nature of the case it was not in the power of the plaintiff to show expressly in what manner the work was performed: Shafer v. Lacock & Co., 168 Pa. 497. It is still the rule of law, that the happening of the accident, in cases such as this one, is not evidence of itself of negligence, but the quantum of proof necessary to establish negligence under certain circumstances need be very light. When a thing which causes injury is shown to be under the management of the defendant, and the accident is such as in the ordinary course of things does not happen, if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendant, that the accident arose from a want of care: Geiser v. Railways Co., 223 Pa. 170. While the burden of proof is on the plaintiff in such cases, it is not required that the fact be established by direct or positive proof; like any other fact, it may be established by circumstantial evidence, and on

account of the great difficulty in proving negligence in such cases any proper evidence from which negligence may be inferred is sufficient to throw the burden of proof on the defendant: Matthews v. Railroad Co., 18 Pa. Superior Ct. 10.

In a case where human life was at stake, Judge GIBSON said in Com. v. Harman, 4 Pa. 269, "Circumstantial evidence is, in the abstract, nearly, though perhaps not altogether, as strong as positive evidence; in the concrete, it may be infinitely stronger. Indeed I scarcely know whether there is such a thing as evidence purely positive. . . . The only difference between positive and circumstantial evidence is, that the former is more immediate, and has fewer links in the chain of connection between the premises and conclusion, but there may be perjury in both. No human testimony is superior to doubt," and this standard has never been departed from in either criminal or civil cases. The same thought is reiterated by Judge BROWN in Lanning v. Railways Co., 229 Pa. 575, "The appellees were not required to establish the negligence of the defendant by direct or positive proof. Like any other fact, negligence may be, and often is, established by circumstantial evidence; but when such proof is relied upon, it must fairly and reasonably lead to the conclusion that the specific act of negligence existed, as charged, and was the proximate cause of the injury sustained. See also Zercher v. Transit Co., 50 Pa. Superior Ct. 324; Matthews v. Railroad Co., 18 Pa. Superior Ct. 10. The defendant presented a persuasive case, on this argument, but the facts were carefully submitted to the jury, and there was sufficient evidence and inferences to be drawn from the established facts to justify the jury in finding that the broken wire of the defendant company had not been inspected and repaired with reasonable care, to the date of the accident.

We cannot say as a matter of law that the testimony of the experts was so unreasonable as to be ignored or

disbelieved. Their credibility was for the jury, as the proper tribunal to decide. The controverted facts were supported by oral testimony adduced by each side, and while the case is a close one, the doubt as to the propriety of the verdict depends on the disputed facts and not as to the law applicable to them: Blumenthal v. Green, 52 Pa. Superior Ct. 292; Bartholomew v. Kemmerrer, 211 Pa. 277.

The judgment is affirmed.