Butler, Appellant, *v.* Del Favero.

Argued December 12, 1934.

Before Trexler, P. J., Keller, Cunningham, Baldrige, Stadtfeld, Parker and James, JJ.

*Robert S. Bachman*, for appellant, filed no brief.

*Edward J. Fox, Jr.*, of *Fox and Fox*, for appellee.

Opinion by Cunningham, J., February 1, 1935:

The question involved upon this appeal may be thus stated in general terms: Under which of two equally

well established rules of law do the uncontroverted facts, along with the legitimate inferences deducible therefrom, bring this case? Plaintiff, riding in the rear seat of her automobile, operated by her brother and being driven eastwardly on the William Penn Highway toward Easton, was severely injured when the left rear fender of her car was struck by a car owned by defendant and which she was driving in the opposite direction.

Plaintiff's action for damages was predicated upon the averment that defendant did not have her automobile under proper and adequate control, but operated it without due regard for the rights and safety of the plaintiff. Defendant did not file an affidavit of defense, nor did she testify herself, call any witnesses in her behalf, or make any effort to explain in any way the cause of the collision. The jury returned a verdict for plaintiff in the sum of $700, but the court below, in banc, granted defendant's motion for judgment n. o. v.; hence this appeal by plaintiff.

Material facts appearing from the testimony of plaintiff and her driver and his wife (the third occupant of plaintiff's car) may be thus stated: The accident occurred about 9:30 on Sunday night, February 7, 1932; the road was dry and the weather clear. The cement portion of the highway was sixteen feet in width and had a berm of macadam along each edge from one to two feet wide; at the point of the accident the road was straight and practically level. Neither driver was interfered with in any way by the presence of cars other than those with which we are now concerned. The important portion of the testimony of Horace L. Powers, the driver of plaintiff's car, reads:

"A. As we were driving along this other car approached us. Seeing nothing unnecessary, the lights flashed by me, and at that time the impact in the back of the car to my left swung the car crosswise in the road, and in trying to right the car it struck the em-

bankment on the left and upset. Q. What was your position in the road just before this impact? A. I was on the right hand side as close as I could be without getting off the concrete. Q. Both of your front wheels were then on the concrete? A. On the concrete at the time. Q. Where was your attention directed at that time? A. To the road, straight ahead. I was looking principally to the right, at an angle, at the pedestrians walking along at that time. Q. Did you see the whole road? A. Yes. Q. At what speed were you going? A. Between twenty-five and thirty miles. ...... Q. You saw what proved to be the other car approaching you? A. Yes. Q. And how far did that car get before it struck your car? A. The lights flashed by me and the impact occurred to me on the left in the rear. Q. What part of your car did the other car hit? A. Along the left side, right in front of the left rear fender.''

On cross-examination, his answers to certain questions of the trial judge were: ''Q. Did I understand you to say you saw this car coming? A. Yes. Q. Where was it coming from? A. It was coming from Easton, going west, on the William Penn Highway. I think, as I understand, Miss Del Favero was taking her brother to Lehigh University in Bethlehem. Q. Going towards Bethlehem? A. Going towards Bethlehem. Q. And struck the front of your left fender? A. Left rear fender. Q. Would you call it sideswiping? A. I don't know if you would call it that. It seemed the lights passed me instantly and the car seemed to swing into us and turned us around.''

The wife of this witness testified: ''Q. Just what happened at that moment? A. The lights passed us and then there was a sudden crash at the rear of the left hand side of the car. Q. Of your car? A. Yes.''

We quote these excerpts from the testimony of plaintiff: ''Q. What were you doing at the time of the accident? A. I was dozing. Q. What was the

first thing that you realized? A. A blow underneath my arm here, and then a blow on top of my head. Q. Could you tell from what direction the blow came underneath your left arm? A. Yes. It was this way (indicating). Q. To the side? A. Yes. Q. Could you tell what part of the automobile was struck by the other automobile? A. Just opposite where I was sitting. ...... Q. [You] didn't see how the thing happened? A. No. The first thing I felt was the blow on my left side."

From this testimony plaintiff is entitled to have the inference drawn that as the car in which she was riding was being lawfully driven along its side of the highway, the defendant's car, at the moment of passing, left that portion of the highway upon which it had been proceeding, turned across the center line of the road and struck the left rear side of plaintiff's automobile.

The rule invoked on behalf of defendant, and applied by the court below, is that the mere happening of an accident neither proves, nor raises a presumption of, negligence upon the part of a defendant. The basis of the judgment below is that as plaintiff did not produce direct evidence showing exactly what caused defendant's car to turn from its course, the verdict could not be sustained.

But counsel for plaintiff, admitting that his client had the burden of proving negligence, replies that it is equally well established that negligence may be inferred from attendant circumstances—the test being whether they are such as to satisfy reasonable and well balanced minds that the accident resulted from the negligence of the defendant: Reardon v. Smith, 298 Pa. 554, 148 A. 860; Sakach et ux. v. Antonoplos, ibid, 130, 148 A. 58, and cases there cited.

In this connection, it must be borne in mind that a defendant may, by failing to offer any explanation of an accident, create a situation in which the quantum of

proof necessary to establish negligence need not be heavy. When, as here, a thing which causes the injury is shown to be under the management of the defendant, and the accident is such as in the ordinary course of things does not happen if those who have the management use the proper care, such circumstances afford reasonable evidence, in the absence of explanation by the defendant, that the accident arose from a want of care. In other words, the accident, the injury, and the circumstances under which they occurred, are, in some cases, sufficient to raise a presumption of negligence, and thus cast upon the defendant the burden of establishing freedom from fault: Geiser v. Pittsburg Rys. Co., 223 Pa. 170, 72 A. 351.

We think the principles last mentioned are applicable to the facts in this case and that the observations of ORLADY, J., in Fitzsimmons v. Phila. Rap. Tr. Co., 56 Pa. Superior Ct. 365, are apposite here. These remarks were to the effect that where the instrumentality which causes the injury is under the control of the defendant and an accident of the kind shown does not ordinarily occur when proper care is used, the defendant, if the accident is capable of an explanation which repels the inference that it resulted from his negligence, should make the explanation—the reason for the rule being that he is in a position to do so, while from the nature of the case, it may not be in the power of the party injured to show just how the accident happened.

This was not a case of skidding on a slippery road, and, in our opinion, the circumstance that defendant's car was suddenly driven, or permitted to turn, over to and upon appellant's side of the road, for no apparent reason, was sufficient to require an explanation from her.

In the absence of any explanation, the only evidence in the case was that of plaintiff and her witnesses and we think it was sufficient to support the finding by the

jury that defendant's car was so negligently operated by her that it crashed into the rear of plaintiff's automobile, lawfully traveling upon its own proper side of the highway, and that this negligence upon the part of the defendant caused the injuries for which the action was brought.

The judgment is reversed and the record remitted to the end that judgment may be entered upon the verdict.