Gaul, Appellant, *v.* General Utilities Corporation.

Argued October 7, 1938.

Before Keller, P. J., Cunningham, Baldrige, Stadtfeld, Parker and Rhodes, JJ.

*Morris C. Solomon,* with him *Samuel J. Becker,* for appellant.

*Norman H. Fuhrman,* with him *Franklin J. Graham,* of *Fuhrman, Graham & Fuhrman,* for appellee.

OPINION BY STADTFELD, J., November 22, 1938:

This was an action in trespass to recover damages for personal injuries sustained by reason of a fall on a greasy sidewalk where fuel oil had been placed and permitted to remain.

Plaintiff's statement of claim averred, inter alia, that the defendant through its agents or employees, "negligently and carelessly permitted a large quantity of fuel oil to come upon the sidewalk adjacent to the aforesaid premises and allowed the said fuel oil to remain upon said sidewalk, so that travel thereon by the general public, and more particularly by the plaintiff was made dangerous and unsafe." No affidavit of defense was filed.

The case came up for trial before MACNEILLE, J. and a jury, and resulted in a verdict for plaintiff in the sum of $1500.

The defendant filed motions for judgment non obstante veredicto and for a new trial. The court dismissed the motion for a new trial, but granted the motion for judgment n.o.v. This appeal followed. In determining whether or not the court below should have entered the judgment n.o.v. all evidence and inferences therefrom favorable to the party obtaining the verdict must be taken as true, and all unfavorable to him, if depending solely on testimony, must be rejected: *Hostetler v. Kniseley,* 322 Pa. 248, 185 A. 300.

The accident happened on the northwest corner of 20th and Mt. Vernon Streets. The grease was on the 20th Street side of the premises, a short distance north of Mt. Vernon Street. The long side of this dwelling is on 20th Street, and running northwardly from Mt. Vernon Street about twenty-five feet there is an iron fence 25 inches from the house line. Against the wall of the house is a receptacle for receiving oil, which receptacle is placed 17 inches north of the Mt. Vernon Street house line.

Plaintiff testified that about 11:15 A.M. on March 2, 1934, she walked east on Mt. Vernon Street and turned to go north on 20th Street in the City of Philadelphia. After taking two or three steps along the house line she fell. On her glove and clothing she noticed water, oil and grease, and, upon inspecting in the vicinity of the oil receptacle, she saw oil in the wet snow and dripping from the receptacle. There had been snow and the contention of the plaintiff is that the oil was retained by the snow until the sun caused the melting of the snow to release the oil and in that way it passed down on the sidewalk. The plaintiff also testified that at the time of this happening, there had been thawing, and the pavement on 20th Street was covered with water and dirt from the snow melting and flowing across the pavement from the yard or enclosure; that what appeared to her to be dirty water, turned out to be dirty oil. This condition covered the pavement from the fence to the curb.

It was established at the trial of the case, that at about 5:00 o'clock in the afternoon of the preceding day, the defendant's agent had delivered two hundred gallons of fuel oil through the receptacle.

There was testimony by a witness, John Davie, a resident of 2001 Mt. Vernon Street, that at 8:45 or 9:00 o'clock in the morning when he left home, the pavement from the iron railing to the curb was dry; that he passed there and the pavement was all right; that there

were two or three inches of snow in the yard. He further testified that on his return home between 11:30 A.M. and 12:30 P.M., as a result of someone telling him of the accident, he examined the pavement and the receptacle. He testified that the receptacle was all right, but that there was oil across the pavement and water mixed with oil; that the snow in the enclosure had mostly melted and flowed down across the pavement from the railing to the curb for the length of the railing; that there was fuel oil and water under the receptacle and flowing from there down toward the curb; that he took soapy water and cleaned the pavement from the receptacle to the curb for a space about four feet wide. He also testified that he had cleaned his pavement from the fence to the curb the day after the storm. It was also established that oil already in the tank could not possibly flow back and come through the receptacle on to the pavement. There was testimony that on the 26th and 27th of February there had been snow storms amounting to a depth of seven and four-tenth inches; that on March 1st at 8:00 P.M., there remained on the ground a depth of five and seven-tenths inches; that on March 2d this depth had been reduced by thaw to three and five-tenths inches; that from the time of delivery of the oil until after the time Mr. Davie had left home, viz: 9:00 A.M., the temperature had been at 32 degrees or lower, and the thaw had not started. It was also testified that during the morning of March 2d, there had been considerable thawing. The witness, Davie, also testified that there was no other oil on the sidewalk except at the point indicated, starting from the receptacle down to the curb, approximately four to six feet wide. The witness also testified that the receptacle was oily and greasy on the outside of it, and that in back of the receptacle there was some snow, which was all yellow from fuel oil, which snow he knocked off. The witness also testified that when the oil was delivered on March 1st, the defendant's

driver didn't come into the house, but that he opened the window and told him that the tank was about one-eighth full, and that he wanted 200 gallons. The witness also testified that he was home practically every time that Green delivered oil, and that he personally saw Green on at least two prior occasions spill oil, and that on one occasion Green said to Davie at the time of the spill—"I have opened my vent too wide, or valve too wide, at the receptacle." Davie also testified that on at least ten occasions he saw oil under the receptacle immediately after Green had delivered it. Davie also testified that there was never any other oil of any character or kind on the sidewalk on 20th Street or on Mt. Vernon Street, other than fuel oil which came there at the time of the delivery by Green on prior occasions. Davie also testified that the oil at all times had its source at the receptacle down to the ground, and from that point on to "the pavement and run, all depending on the amount that was spilled." Davie also testified that it was dark at the time the oil was delivered on March 1, 1934.

Madeline Bateman, daughter of the plaintiff, testified to the fact that the plaintiff's clothes were filled with oil when she returned home the day of the accident.

Walter E. Vosselmann, testified that he has been driving fuel oil apparatus and delivering fuel oil since 1923, and enumerated several causes of spillage. This witness testified that if oil were put in snow, it would stay in the snow as long as the temperature remained below 32 degrees, and when the snow melted, the oil would run down with the melted snow, and also that the oil would discolor the snow. This witness also testified that from his experience, if one stepped on oil and water mixed, he would slip.

The court below, in entering judgment non obstante veredicto, relied on *Gorman v. Brahm's Sons Inc.*, 298 Pa. 142, 148 A. 40, and kindred cases. That case

was an action against the owners of a grocery store to recover for personal injuries from plaintiff's falling on a flight of stairs in the store, where plaintiff's proof is that after entering the store as a customer, she ascended a flight of stairs, on which men were carrying up open baskets of spinach, and after an expiration of an hour, she descended the same stairs and slipped on a bunch of wet and crushed spinach on the stairs and was injured. There was no evidence that the spinach had fallen from the baskets or how long it had been there. The court held that plaintiff had not met the burden of proof and entered a nonsuit which it subsequently refused to take off. On appeal, the order was affirmed. That case is readily distinguishable from the instant case. There was ample evidence to warrant the jury in finding that the oil on the sidewalk was of the same character as that delivered by the defendant and since it was established that the oil, once delivered, could not flow back out of the receptacle, the necessary inference would be that it had been placed at the receptacle reserved for the defendant by its servant at the time of delivery. The length of time that the oil remained would not affect the negligence of the defendant. If it was placed there at the time of the delivery of the fuel oil, the defendant's servant saw it or had an opportunity to discover it by the exercise of proper care and it was his duty to remove it, and his failure to do so would be negligence imposing liability on the defendant. The defendant had exclusive control of the delivery of the fuel oil. Under the circumstances, it was the duty of the defendant to use proper care to avoid any spillage of fuel oil that might come upon the sidewalk and endanger pedestrians. In the ordinary course of things, the accident would not have occurred, if due care had been exercised in making the delivery of the fuel oil.

Quoting from the opinion by Brother CUNNINGHAM

in *Butler v. Del Favero*, 116 Pa. Superior Ct. 534, 176 A. 765, at p. 539: "...... where the instrumentality which causes the injury is under the control of the defendant and an accident of the kind shown does not ordinarily occur when proper care is used, the defendant, if the accident is capable of an explanation which repels the inference that it resulted from his negligence, should make the explanation—the reason for the rule being that he is in a position to do so, while from the nature of the case, it may not be in the power of the party injured to show just how the accident happened." Also, in *O'Brien v. Gray*, 121 Pa. Superior Ct. 27, 182 A. 746, in an opinion by Brother BALDRIGE, at pp. 29, 30, said: "The plaintiff must furnish some facts tending to show a probability that the accident would not have occurred without the defendant's negligence; but *it is not necessary to prove the negligence by positive evidence*. It may be shown by a proof of circumstances from which the jury are permitted to infer negligence on the part of the defendant ......" (Italics supplied). And in *Reardon v. Smith*, 298 Pa. 554, 558, 148 A. 860, the Supreme Court said, "'...... The proof may be furnished by the circumstances themselves. The test is whether they are such as to satisfy reasonable and well-balanced minds that the accidents resulted from the negligence of the defendant.'"

In *Wright et al. v. Straessley*, 321 Pa. 1, 182 A. 682, the Supreme Court, in an opinion by Justice MAXEY said, at p. 5: "There is a class of cases in which accidents are attended by circumstances from which the inference of negligence is legitimate. But in such cases negligence is not a presumption of law. It is a finding of fact, and before the fact can be found a jury must consider the circumstances, reason on them and draw the inference of negligence. We held in *Maerkle v. Pittsburgh Rys. Co.*, 311 Pa. 517, 165 A. 503, that the burden resting upon a plaintiff to show defendant's

negligence in certain types of cases was met by proof of circumstances reasonably giving rise to that inference. Negligence cannot be presumed from the mere fact of the happening of an accident, but it may be inferred from the attendant circumstances."

We believe that the court below erred in entering judgment non obstante veredicto.

Judgment reversed, with leave to reinstate the motion for new trial.