# Walker et al., Appellants, *v.* Supplee-Wills-Jones Milk Co.

Argued October 7, 1940.

Before Keller, P. J., Cunningham, Baldrige, Stadtfeld, Parker, Rhodes and Hirt, JJ.

*James F. Masterson,* for appellants.

*Charles E. Kenworthey,* for appellee.

OPINION BY CUNNINGHAM, J., February 28, 1941:

The action below was trespass by Mildred M. Walker and her husband, John J. Walker, to recover damages for personal injuries alleged to have been sustained by the former on the afternoon of August 30, 1938, while she was a passenger in a trolley car operated by the then Philadelphia Rapid Transit Company, when a horse-drawn vehicle owned by the Supplee-Wills-Jones Milk Company, of Philadelphia, the defendant, struck the side of the car.

No affidavit of defense was filed; the trial before McDEVITT, P. J., and a jury, resulted in verdicts in favor of the wife-plaintiff for $1250 and $500 for her husband; but subsequently defendant's motion for judgment in its favor notwithstanding the verdicts was granted; each plaintiff has taken an appeal from that judgment. The appeals raise the same question— whether at the conclusion of all the testimony binding instructions for the defendant would have been proper —and, therefore, but one opinion will be filed.

The accident happened on Main Street, between Fourth and Fifth Streets, Darby; it carries two trolley tracks; the car was running on the eastbound track and the wagon was being driven in the opposite direction in the other track; it was a two-horse vehicle with a top, and sideswiped the car about fifteen feet from the front of the latter. A number of automobiles were parked on the north side of Main Street between the westbound track and the curb.

According to the wife-plaintiff's testimony, she "sat about half-way in the car on a single seat on the right side facing the motorman ...... and as the car approached 4th and Main Streets in Darby, there was this terrible crash and [she] was thrown to the floor." Her testimony continued: "Q. Where did the crash occur? A. To the left of me, with the broken glass and the horses rearing up through the window. Q. That was on the left-hand side of the trolley car as it proceeded east? A. Yes. Q. About how far from the front of the trolley car did the crash occur? A. Well, between me and the front of the car. I would say about a third way of the car."

The following excerpts include her testimony with relation to the defendant's wagon and team: "Well, as I was there on the floor, all the glass crashed around and the horses appeared to be coming through the window, and the shaft stuck out through the broken glass ...... Q. Did you see the truck that was attached to the horses at the time or after the impact? A. No, all I could see was just the horses coming through the window. It appeared to be they were all there. Q. You mentioned a shaft. What did you mean by that? A. Why, the dividing between the two horses, I would judge it to be. Q. This was a two-horse vehicle and a shaft is between? A. Yes, sir."

Clearly, the above testimony, which is all that was adduced by or on behalf of plaintiffs, with the exception of that relating to the extent of the wife-plaintiff's injuries, shows nothing more than the happening of an accident. That is not enough to entitle the plaintiffs to go to the jury: *McAvoy v. Kromer et al.*, 277 Pa. 196, 120 A. 762, and cases there cited.

In *Quicksall v. Abbotts Alderney Dairies*, 89 Pa. Superior Ct. 420, the plaintiff, also a street car passenger, was injured when the defendant's runaway horse dragging a part of a wagon dashed against the side of the

car. Those, and only those, facts were shown. At page 421, Mr. Justice LINN, then a member of this court, said: "There is no evidence describing how the horse got away from its driver, nothing to indicate whether it had been left unhitched or unattended, or that it was vicious or unroadworthy in any respect whatever. Is the accident itself evidence of defendant's negligence in the care of the horse? The view of the learned court below appears in the instructions that the jury 'may infer from the fact that the horse was running away unattended, with the shafts and two wheels of the wagon attached to it, [that] the owner of the horse was guilty of negligence.' We are constrained to differ from that conclusion. *Negligence must be shown.* The owner of a horse is not an insurer against accident: *Barshay v. Ice Co.,* 84 Pa. Superior Ct. 538." (Italics supplied.) Similarly, in *Johnson v. American Reduction Co.,* 305 Pa. 537, 541, 158 A. 153, our Supreme Court held: "The skidding of a vehicle does not of itself establish or constitute negligence. It is encumbent upon the plaintiff to prove the skidding resulted from the negligent act of the defendant; otherwise he is absolved from the consequences ......"

The case of *Taormino v. Johnstown Traction Company,* 302 Pa. 264, 153 A. 149, cited in behalf of plaintiffs, does not seem to have any application to the situation here present. There, the plaintiff's decedent was driving a wagon in the same direction as a trolley car. He pulled to the side, stopped, and signalled the trolley to go ahead. After the car had passed about one-third of its length, the rear wheel of the wagon came in contact with it. The horse became frightened and leaped forward, throwing the driver partially out of the wagon, and ran away. The basis of the nonsuit was that the driver had been guilty of contributory negligence in that he either misjudged the distance or backed his wagon into the trolley.

The utmost that can be said about the testimony for the plaintiffs in the case at bar is that it was sufficient to require an explanation from the driver of the wagon of the proven circumstances that a vehicle under his sole control suddenly left the track in which it was traveling and crashed into the trolley car. See *Butler v. Del Favero,* 116 Pa. Superior Ct. 534, 176 A. 765.

In the case just cited the defendant declined to give any explanation of a collision comparable to the one here involved; we reversed a judgment, n. o. v., in his favor and entered judgment on the verdict. Here, however, the defendant's driver, Edwin W. Morris, gave an explanation of the accident and our inquiry is whether it contains anything so indicative of negligence upon his part as to supply the missing element in plaintiffs' case.

Morris testified he was driving his team in a westerly direction on the westbound car track of Main Street, at a "medium trot, because on the main street you couldn't very well walk the horses. It would be more or less of an obstruction to traffic." His account of the accident follows: "After crossing 4th Street, I was riding in the car tracks and machines parked on the side. Q. Which side? A. On the right-hand side, which necessarily made me be in the car tracks to get on through. I passed one automobile, and right at the next automobile, a man stepped from between the two cars. There was a lot of cars there, and a man stepped out from between the automobiles and saw the horses coming. He stepped back alongside of his fender and he raised his hand to pull himself in. He had a top coat on and he raised his hand to pull his coat in, because there is only a small space between his car and the hub of my wagon coming along on the car track, and he had one foot up on his running board, and the other foot on the ground, and as he raised his hand, the horse on my right-hand side jumped. I had the lines in my hand. I doubled into the other hand and pulled

back and threw the brake on and grabbed both lines and pulled on the right one the hardest because the right horse had jumped and went into the other horse. With that they bolted and the swerve made the wheels of the wagon come out in the car track. As you see, the front wheels will swivel, but the back wheels are stationary, which makes the wagon swing when it comes out of the car tracks. As it came out swinging the left front of my wagon hit the front corner of the trolley car and threw the horses to the ground and threw me off from the seat ...... Q. Then the trolley car struck the horses and knocked them down and knocked you off? A. No, the trolley car hit the wagon, the corner of the wagon, and the horses being off-balance at the time, they both dropped to the street. They were up again that quick. Q. How do you know they were up again? Weren't you stunned? A. I was right in back of them and I fell to the ground between them. I seen them start to get up. I could hear their hoofs scrape, and with that I started rolling to get to the side. I started rolling towards the gutter. Somebody grabbed [me]."

The driver further stated that the horses were not "green," and although the accident occurred the second day upon which he had been driving that team, he had been working for the defendant company over four years, and that it was the roof of the wagon, and not the singletree nor the horses, that came into contact with the trolley, breaking some of its windows.

No attempt was made to contradict any part of the driver's testimony, and we are unable to see anything in it which would support an inference of any negligence upon his part. This is not a case in which a driver "allowed his horses to wander from the path of safety and to bring him and his load into collision with the car," as was the situation in *Morrow v. Delaware County* and *Philadelphia Electric Railway Company*, 199 Pa. 156, 48 A. 974, cited by plaintiffs. Here,

the movements of an unidentified man caused the right horse to shy and the fact that the driver may have had the lines in one hand instead of both is immaterial, since they had to be doubled into one hand to enable him to apply the brakes,—a proper course for him to pursue after the horse, through no fault of his, had shied. Furthermore, it was then expedient for him to pull on the right line "the hardest," as he did, in order to regain control of the horse on that side. The bolting of the team which then occurred was not caused by any improper action on his part and the naturally resulting swing of the wagon as it came out of the car track was unavoidable since the track was the only means of travel available, due to "machines parked on the side." The horses were not "green" and were driven at a "medium trot" which was reasonable and necessary to avoid obstructing traffic.

Our conclusion is that the explanation given by the driver was a reasonable one, and that his testimony did not supply the essential elements of proof which plaintiffs' case lacked. The injuries sustained by the wife-plaintiff are most regrettable, but we agree with the court below that, upon the whole record, they cannot be attributed to any negligence upon the part of defendant's driver. The assignments must therefore be overruled.

Judgment affirmed.