## McCann *v.* Philadelphia Fairfax Corporation, Appellant.

Argued April 22, 1942. Before SCHAFFER, C. J.; MAXEY, DREW, LINN, STERN, PATTERSON and PARKER, JJ.

*Michael A. Foley,* with him *Henry I. Koplin,* for appellant.

*Philip A. Campbell,* with him *Victor Frey,* of *Frey & Campbell,* for appellee.

OPINION BY MR. JUSTICE DREW, May 25, 1942:

Plaintiff, Chloe McCann, brought this action of trespass against defendant, Philadelphia Fairfax Corporation, to recover damages for injuries suffered when she fell upon the linoleum floor in a hall of the latter's apartment hotel. From judgment entered on the verdict in favor of plaintiff, defendant appeals, assigning as error the refusal of the learned court below to grant its motion for judgment n. o. v.

On April 25, 1939, plaintiff and three other ladies had gone to the apartment of a friend, Mrs. Jacques, on the fifth floor of defendant's hotel. To reach the apartment from the elevator it was necessary to traverse, in a westwardly direction, a fifty-foot corridor five feet wide, and then to turn south into another corridor at right angles to the first. Both corridors were inside and without natural light. The first was illuminated by a forty-watt bulb at each end and a fifteen-watt bulb halfway between. On the day in question the north half of the first, or east-west, corridor, which had been cleaned on the day previous, presented a shiny appearance, and the other or southerly half was being cleaned by defendant's servant, Hewitson. He had placed signs at the elevator and at the corner of the two corridors, directing guests and visitors to keep to the right when coming from the elevators and to the left when returning to them. Hewitson had finished washing the south half shortly before the accident and was engaged in applying, for the purpose of filling the porous openings in the linoleum, a liquid rubber

"sealer", which was slippery when wet and had, according to the testimony of two of plaintiff's witnesses, a sudsy appearance. He was working from west to east and kept the five-gallon can containing the sealer on his left close to the wall.

Shortly after one o'clock the party left Mrs. Jacques' apartment to go to the dining room for lunch. Three of the ladies reached the elevator without mishap. Plaintiff, however, just after she had turned the corner and had walked a few steps along the east-west corridor, slipped and fell, and was painfully injured. She testified that as she was proceeding toward the elevator she saw that the floor was being cleaned, that she could see what was on the floor, that just before she slipped she saw a "substance on the floor" which "did not look sudsy", but "more like polished wax", that she was on the north side of the hall when she fell, that after falling her stockings were wet, and that she could not tell whether her skirt was wet or not. Mrs. Jacques, called in behalf of plaintiff, testified that "all over her [plaintiff's] suit was some slimy substance, all over her shoes, over different things, over everything the woman had on." The other ladies did not see the plaintiff fall.

In the foregoing statement we have taken only the version of the evidence favorable to plaintiff, as the jury's verdict requires us to do: *Muehlhof v. Reading Co.*, 309 Pa. 17. From these facts two theories of the cause of the accident appear. The first, deduced from plaintiff's own testimony, is that she fell on wax which had been applied to the north half of the corridor the day before the accident. The mere fact that a person falls on a recently waxed floor, however, does not of itself justify a finding of negligence on the part of the owner of the building: *McCann v. Gordon*, 315 Pa. 367; *Dimarco v. Cupp Grocery Co.*, 88 Pa. Superior Ct. 449. The cases cited by plaintiff, *Weir v. Bond Clothes, Inc.*, 131 Pa. Superior Ct. 54, *Ralston v. Merritt*, 117 Pa. Superior Ct. 487, and *MacDonald v. F. & W. Grand*, 89 Pa. Superior Ct. 526, are clearly distinguishable because in

all of them wax or oil lay thick on the floor and had not been properly rubbed in. In the absence of proof of some such condition in the instant case, there is nothing to indicate negligence on the part of defendant in applying the wax.

The other theory offered by plaintiff to explain the accident is that some of the sealer which was being applied to the south half of the corridor had spilled or splashed onto the north half. The difficulty in upholding this contention is that the record is bare of testimony to support it. Neither plaintiff nor any of her witnesses said that they saw any of the sealer on the north half either before or after the accident. The fact that plaintiff was covered with some slimy substance is not, without more, indicative that that was what caused her to fall, in the face of the admitted presence of the sealer on the south half of the narrow corridor. Such a large quantity of the substance as Mrs. Jacques described on plaintiff's clothing, coupled with the fact that the other three ladies had passed without difficulty, leads unavoidably to the conclusion that although plaintiff was on the dry side when she slipped, she came in contact with the wet side after she had fallen to the floor. We have carefully examined the cases cited by plaintiff, and find that in all of them there was direct testimony of the presence of the slippery substance causing the accident, such as ice (*Ross v. Mayflower D. Stores, Inc.*, 324 Pa. 513), a piece of fat and a cabbage leaf (*Markman v. Bell Stores Co.*, 285 Pa. 378), water and slush (*Flora v. Great A. & P. Tea Co.*, 330 Pa. 166), or oil on the sidewalk (*Gaul v. General Utilities Corp.*, 133 Pa. Superior Ct. 282). The lack of evidence of the presence in plaintiff's path of any substance likely to cause an accident conspicuously distinguishes the present case.

The learned court below, while admitting that there was doubt as to the sufficiency of plaintiff's proof of defendant's negligence, felt that the testimony of defend-

ant's own witness, Hewitson, cured the deficiency by establishing that the can of sealer was kept against the north wall in the space left open to passage, and that when Hewitson took the sealer from the can with a lamb's wool applicator to spread it on the southerly part of the corridor, some of the slippery liquid must have spilled in plaintiff's path. In this the court was in error. From Hewitson's testimony it is clear that as he worked from west to east he was moving backwards, and that therefore the can on his left was next to the south wall. Otherwise he would have been kneeling in the wet sealer he had just applied.

While the question of plaintiff's contributory negligence was considered at large in the court below, it was not raised either in the statements of the questions involved filed by counsel or at the oral argument before us. Under such circumstances we would not ordinarily consider it (Rule 50 of the Supreme Court Rules), but since the Act of April 22, 1905, P. L. 286, requires us on motions for judgment n. o. v. to review the action of the court below and enter such judgment as shall be warranted by the evidence taken in that court, we cannot close our eyes to this question in the instant case, because plaintiff's evidence clearly disclosed contributory negligence. Her testimony that she could see what was on the floor and that she saw a substance there before she stepped into it shows that had she been paying careful attention, as it was her duty to do by reason of the cleaning operation then in full view, she would have avoided the danger she now complains was the cause of her falling. One who heedlessly walks into a place which he knows or should know may be dangerous takes the chance of the result and must abide by the consequences: *Jones v. Counties Gas & Elec. Co.*, 289 Pa. 128. Hence, even if there had been evidence of negligence on defendant's part, judgment n. o. v. should have been entered on account of plaintiff's contributory negligence.

Judgment reversed and here entered for defendant.

DISSENTING OPINION BY MR. JUSTICE STERN:

Plaintiff, a woman of seventy, suffered a distressing accident. She was permanently crippled, and the jury awarded her $7,500 as damages, an amount not challenged by defendant as excessive.

The question of contributory negligence may, in my opinion, be readily disposed of. Defendant's able counsel not only makes no assertion on this appeal that plaintiff was negligent, but, at the bar of the court, he *expressly disclaimed* such a defense. Plaintiff testified that "I was in it [the slippery substance] when I saw it. The light, it seemed, was a little stronger in back of me, in the corner, when I stepped around than it was right in front of me—that was not as strong, and it threw a shadow, and it was very difficult to see, because this substance was so near the color of the linoleum. . . . The light right behind me was stronger than the light in front and that threw a shadow . . . of myself . . . [in front of me]." True, she had given defendant a statement in which she said she "could see what was on the floor," but this evidently did not refer to a time prior to the accident, for in her testimony she said: "I could see *when I was down.*" Defendant's employe, who was polishing the floor when the accident occurred admitted that the "sealer" (which was the slippery substance alleged to have caused the accident) was "almost the same color" and "the same thinness" as the wax which covered the floor. Under such circumstances I do not see how a jury could properly find as a conclusion of fact—much less a court declare as a matter of law—that plaintiff was guilty of contributory negligence.

As to the question of defendant's negligence, it is true, of course, that if plaintiff fell on the waxed floor merely because of its general slipperiness, she cannot recover, but it is plaintiff's contention that defendant had negligently allowed some of the "sealer" to splash or spill over onto the part of the corridor where she was walking and it was this substance which caused her to fall. Defendant had put up a sign "Keep to the Left",

and thus impliedly represented to plaintiff and the other ladies that the left (north) half of the corridor was safe for passage. Defendant's employe testified that plaintiff stepped over to the right (south) half where the "sealer" was being applied, but plaintiff stated explicitly, and in this was corroborated by her companions, that she fell on the left (north) side of the corridor, and that she "got as close to the wall as I could get." It is said in the majority opinion that although plaintiff walked and fell on the left side she may have slipped on the wax which had been applied to that half, and that there is no evidence in the record that any of the "sealer" which was being applied to the south half of the corridor had been allowed to get over to the north half. I cannot agree that there is no such evidence in the record. On the contrary, there is an abundance of testimony to the effect that, when plaintiff was carried into the apartment of her hostess, her clothes, shoes and stockings were covered not with wax, but with the "slimy" substance or "sealer"; the jury saw the stockings and could judge this for themselves; one of plaintiff's companions said positively that "her clothing was marked with the substance on the floor," which she described as "soapy" and "grayish". As to this, the majority opinion reaches the conclusion that "although plaintiff was on the dry side when she slipped, she came in contact with the wet side after she had fallen to the floor." Unfortunately for this hypothesis, it is negatived by all the testimony. Plaintiff herself said that she was "not down on the right hand side," and, what is absolutely conclusive on the point as far as the propriety of a judgment n. o. v. is concerned, one of the ladies who had walked ahead of her in the corridor testified that when the accident occurred she looked around and saw plaintiff on the floor *"against the north wall. . . . As I remember, her feet were up against the wall."* This witness was the first person who tried to pick her up. Her testimony establishes that plaintiff did not fall over to the right nor did her shoes (subsequently found to be

covered with the "sealer") come in contact with the south half of the corridor. While plaintiff testified that "it looked more like polished wax . . . I stepped into," it has already been pointed out that the "sealer" and the wax had "almost the same color." The question was certainly one for the jury.

If defendant, inviting plaintiff and the other ladies to use the north half of the corridor, allowed some of the slippery and slimy "sealer" to make of the passageway what the learned trial judge not unjustly characterized as a trap, defendant was clearly chargeable with negligence.

I would affirm the judgment entered on the verdict.

MAXEY, J., and PATTERSON, J., join in this dissent.