Murphy *v.* Bernheim & Sons, Inc., Appellant.

286

Argued April 22, 1937. Before KEPHART, C. J., MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Maxwell Pestcoe,* with him *Maxwell L. Davis,* for appellant.

*Frank A. Simons,* of *Bender, Rubin & Simons,* for appellee.

OPINION BY MR. JUSTICE MAXEY, June 25, 1937:

Plaintiff below instituted an action in trespass against the defendant. He claimed that on or about September 22, 1933, he was sent by his employer to make certain roof and skylight repairs over an elevator shaft at a building located at 1041 North Third Street, Philadelphia, and occupied by defendant. About 8 A. M. daylight saving time, on the date in question, he entered the premises to make these repairs. He inquired of an employee of the defendant as to how he could get to the roof. The employee directed plaintiff to use an elevator located along the Master Street side of the premises.

Plaintiff proceeded toward the elevator and he avers that as he walked to the elevator shaft, he found the entrance thereto open and no guard or gate down, and believing the elevator lift to be level with the floor on which he was at that time, he walked through the opening and fell to the bottom of the elevator shaft, sustaining serious and permanent injuries.

The negligence averred is that defendant failed to provide adequate light in the area of the elevator so as to bring into normal view the actual condition of the elevator shaft and negligently permitted the elevator shaft to remain unprotected when the lift was not on the ground floor. After trial the jury returned a verdict for the plaintiff in the sum of $20,000. Motions for a new trial and for judgment n. o. v. were refused. Defendant appealed.

The chief contention of the appellant is that plaintiff was guilty of contributory negligence.

A court will not declare a person guilty of contributory negligence unless the evidence of his negligence is clear and unmistakable. In *McCracken v. Curwensville Boro.*, 309 Pa. 98, 114, 163 A. 217, we quoted the following with approval from 26 R. C. L., pages 1067-69, sec. 75: "It is an established principle that if there is any credible evidence from which a reasonable conclusion can be drawn in support of the claim of either party in the trial of a case, the question must be left to the jury. . . . A verdict should not be directed if on all the facts and circumstances there is room for fair and sensible men to differ in their conclusions, or, as it is sometimes stated, [if] the evidence is not such that honest minds could reach but one conclusion."

We have also held that in determining whether or not the victim of an accident is guilty of contributory negligence it must be borne in mind that the victim had a right to assume within reasonable limits that the party whose negligence primarily caused the injury would perform his duty. In *Adams v. Fields*, 308 Pa. 301, 305,

162 A. 177, we cited with approval the following from 20 R. C. L., page 117, sec. 101: "Everyone to whom a duty is due has a right to assume that it will be performed."

One's caution becomes intensified when he is conscious of danger; it is relaxed when he has no reason for apprehensions. When elevators first came into use persons using them or approaching elevator shafts did so with misgivings, such as those of passengers on railroad trains when the latter first came into use. Nowadays, elevators and elevator shafts give rise to no more apprehensions of peril than do railroad trains to those who use them. In these days of perfected mechanical equipment, probably not one person in ten thousand has ever approached an elevator shaft without finding either the elevator there to receive him or the shaft so barred that he could not have walked into it even if he tried to do so. The fact that elevator shafts are no longer places of probable danger is a fact which individuals carry in their subconscious minds when they approach them and therefore they do not normally approach them with the utmost degree of caution. When one becomes accustomed after long experience to finding elevator shafts safeguarded, he naturally takes it for granted that *all* elevator shafts are safeguarded. This does not excuse him from taking care but it decreases the degree of care the law imposes on one who would escape the imputation of negligence. Of course, if in "broad daylight" one walked into an open elevator shaft, he could justly be charged with negligence exactly as if under the same conditions of light he walked into a hole in the sidewalk. Likewise, if one walks in the darkness and falls down an elevator shaft he could justly be charged with negligence, for walking in darkness, unless one is absolutely sure of his terrain, is in itself an act of negligence.

When one walks in dim light where he has no reason to apprehend danger and uses his best judgment as he proceeds, and then meets with an accident, the question

whether or not he is guilty of contributory negligence is usually for the jury. In 9 R. C. L., sec. 23, page 1257, it is stated: "An elevator is not supposed to be a place of great danger, such as a railroad track, which is to be approached with great caution. . . . Where the entrance [to an elevator] is dark, it would seem that ordinary care would condemn the act of a person who steps into an elevator shaft without satisfying himself that the elevator is there. On the other hand, if the entrance is lighted, it may be argued that, if the intending passenger had exercised the care required of him, he would have discovered the danger. But between the extremes of darkness and lightness there is a middle degree of illumination. Where the elevator approach is but dimly lighted, a person may be justified in thinking that an elevator is at the floor when in fact it is absent. Under such circumstances, his contributory negligence is plainly a jury question." (Citing *Shoninger Co. v. Mann,* 219 Ill. 242, 76 N. E. 354, 3 L. R. A. (N. S.) 1097, and *Pauckner v. Wakem,* 213 Ill. 276, 83 N. E. 202, 14 L. R. A. (N. S.) 1118.)

As to the condition of illumination at the time of the accident, plaintiff testified as follows: "The light coming into the elevator was a diffused light; it was not a bright light, but it shone down the shaft and reached a certain figure, about level with the floor, and seemed to make a shadow with the dust and particles there on the floor, and I took it to be the floor of the elevator. . . . I didn't see any barriers of any kind in front of the shaft, and as I have been around, most all the elevators I have ever seen have had some kind of a barrier in front of them at every entrance, and as I took it the floor being there, and no barrier being there, I walked off on what I thought was the floor of the elevator. I fell into the shaft." Furthermore, it appears that an employee of the defendant directed the plaintiff to "get on" the elevator. Plaintiff describes this episode as follows: "As I walked through the door of the building I saw the man

who said he would take me up in the elevator standing a matter of 18 feet inside the building on almost a direct line with the door. I walked over to him. He had his back toward me. He had his back toward the doorway. I walked up to him and said, 'Where is this elevator?' He pointed over his shoulder with his thumb like that and said, 'There it is, get on it.' I turned around and looked over toward where he was pointing." Plaintiff was asked: "From where you were were you able to distinguish the frame of the elevator?" and he answered: "Yes, I could distinguish the frame of the elevator and other things in the room." He was asked whether he could distinguish it clearly. He replied: "Not clearly, but I could make out the shape of it." Considering that plaintiff in the dim light thought he saw "the floor of the elevator" and the fact that he heard an employee of defendant say in answer to plaintiff's question as to the whereabouts of the elevator: "There it is, get on it," we cannot discover in this record any support for a finding that plaintiff exhibited want of due care under the circumstances.

In the case of *Baker v. Ellis,* 248 Pa. 64, 93 A. 821, which was an action to recover damages for personal injuries sustained by plaintiff who fell down an elevator shaft which was not properly guarded, this court, in an opinion by Mr. Justice ELKIN, said: "There is no assignment of error which directly refers to the contributory negligence of plaintiff, but even if this question be considered in connection with the point asking for binding instructions, the most favorable view that can be taken of the testimony is that it was for the jury. It would have been clear error for the judge to declare as a matter of law that the plaintiff was guilty of contributory negligence under the facts as they appear in the record." In *Kinsey v. Locomobile Co.,* 235 Pa. 95, 83 A. 682, which was an action for personal injuries sustained by plaintiff's falling down an unguarded elevator shaft, the court below in its opinion, which was affirmed Per

Curiam by this court, held that "the question of plaintiff's contributory negligence was necessarily submitted to the jury." In *Cathcart v. Sears, Roebuck & Co.,* 120 Pa. Superior Ct. 531, which was a case where a business visitor to a store fell on steps in a dark passageway between defendant's store and a lot provided by defendant for the parking of customers' cars, the Superior Court, in an opinion by Judge RHODES, held that the question of plaintiff's contributory negligence was for the jury and that plaintiff was entitled to rely on defendant's performance of its duty. That court said: "The plaintiff was justified in assuming that the passageway was safe and passable for the purpose offered to its customers by the defendant. Others were using it at the time of the accident in going in and coming out of the defendant's store. The plaintiff was entitled to assume that defendant had performed its duty to those so invited to enter and leave its store by this passageway. The question of plaintiff's negligence was properly for the jury."

Cases in which persons who have fallen down elevator shafts are held guilty of contributory negligence are those in which the victims walked through a room that was almost totally dark. For instance, in *Modony v. Megdal,* 318 Pa. 273, 178 A. 395, the plaintiff testified that just before he fell down the elevator shaft, "it was dark in there and I could not see." He was asked: "It was so dark that it was just black, and you could not see a thing; is that correct?" He answered, "Yes." In *Davis v. Edmondson,* 261 Pa. 199, 104 A. 582, where plaintiff was injured by falling off a platform adjoining a rear door of a hall and where plaintiff was declared guilty of contributory negligence, it appeared that he had "walked out through the doorway in the darkness of the night." The night in question was described as "a dark night." In *Hoffner v. Bergdoll,* 309 Pa. 558, 164 A. 607, the situation was described as "exceptionally dark in the elevator shaft and you couldn't see anybody.

There wasn't any [light]." In all these cases the victims were held guilty of contributory negligence because it is elementary that when one is moving in the dark he must proceed with the greatest caution and literally "feel his way around."

In the instant case there was just enough light to cast shadows which made the victim believe that the elevator was in its proper position. Plaintiff was asked: "Why didn't you see where you were walking?" He answered: "It was the shadows that confused me in there." This fact coupled with the fact already noted that one has a right in these days to expect that if an elevator is not on the floor from which one is approaching the elevator shaft that the shaft will be properly guarded, makes it improper for a court, under the circumstances now before us, to declare a plaintiff who walked into that shaft guilty of contributory negligence as a matter of law.

As to defendant's negligence, the court below in its opinion denying defendant's motions for a new trial and for judgment n. o. v., aptly said: "The absence of the bar from its proper position when the elevator was not at the floor and of artificial light which was available but not turned on set a trap for a person such as plaintiff, who was on the premises for the purpose of making repairs thereto, and under the circumstances the jury was justified in finding that defendant exposed him to danger and did not discharge its duty of exercising reasonable care for his safety." The court then cites *Kinsey v. Locomobile Co.,* supra, and *Baker v. Ellis,* supra. The court below also properly held: "The third ground of negligence averred, that defendant failed 'to give notice or warning as to the unprotected and unguarded opening in the shaft,' was sustained by the evidence."

Complaint was also made by the appellant of the trial judge's permitting the ordinance of the City of Philadelphia pertaining to freight elevators to be read to the jury, because it was not specifically pleaded in the statement of claim. The provisions in question were: "Every

freight elevator shall have its hatchway surrounded by vertical enclosures and gates [describing them]. All gates must be self-closing, etc." The court below said: "Plaintiff did not depend upon the violation of the ordinance as the substance of his case, but merely as evidence of defendant's negligence in maintaining an unsafe and dangerous condition of affairs at the place where he fell. The ordinance was evidential of this, and there was, therefore, no need to plead it specially." The court cites *Weinschenk v. Phila. Home Made Bread Co.*, 258 Pa. 98, 106, 101 A. 926, where it was held that it was not error to admit in evidence a municipal ordinance regulating or relating to the maintenance of freight elevators, where the ordinance was introduced simply as bearing on the question of negligence, and the trial judge sufficiently protected defendant's rights by charging the jury in effect that the proof of the violation of the ordinance was not in itself proof of the negligence charged, but was merely evidence of municipal opinion as to matters on which the municipal authorities had acted and was to be considered with the other evidence in the case pointing to defendant's negligence. In the instant case the trial judge took care in submitting the provisions of the ordinance to the jury, to state that it was only evidence of an expression of municipal opinion, "not as substantive or sufficient proof of the negligence of the defendant."

The only remaining question is whether or not the verdict of $20,000 is excessive. Plaintiff was between 30 and 31 years of age at the time of his injury and he was earning $24 each week. His life expectancy was then 31 years and 2 months. In October, 1936, the rate of pay for men doing the same type of work as plaintiff had been doing was increased 16⅔%. On the question of the size of the verdict, the court below said: "In our opinion the verdict of $20,000 was amply justified by the evidence. Immediately following plaintiff's fall he was taken to the Stetson Hospital where he remained for

five months. Several sutures were put in his thumb and over his right eye. The X-rays showed a fracture of the anatomical neck of the right femur. No callous formed at the site of the fracture and there has been no union of the fragments. He is unable to put his weight on the leg and to walk without the aid of a crutch and cane. The injury is permanent, and although an operation may be helpful, the beneficial results are doubtful. At best there will be a permanent shortening of the leg of at least one and a half inches. The injury has been and will be painful. The uncontradicted medical testimony is that he will be unable to engage in his occupation of roofer or mechanic or in any work requiring agility or sense of balance, and that the only work in which he may engage is that of a watchman or some similar employment. He has been unable to work since he was injured, and it is difficult to determine the extent of his ability to work in the future and the losses thereby resulting. The hospital bill amounted to $502, and the estimated cost of the operation advised by the physicians, including the surgeon's fee and hospital expenses, will amount to between $1,400 and $1,500. Such an operation contemplates a year for hospitalization and convalescence." After a mathematical calculation showing that plaintiff would be entitled to $20,502.67, the court said: "But even this figure is in excess of the amount of the verdict and does not take into consideration the hospital expenses of $502 already incurred and the cost of the operation advised of $1,400 or $1,500. Also, it does not include an allowance for past and future pain and suffering 'The nature of pain and suffering is such that no legal yardstick can be fashioned to measure accurately reasonable compensation for it': *Herb et ux. v. Hallowell,* 304 Pa. 128, 133, [154 A. 582]. On the whole, considering all these factors, we were of the opinion that the verdict was not excessive."

We find nothing in the record which would warrant us in disturbing the judgment of the court below as to

the correctness of the award of damages or on any other question presented.

The assignments of error are overruled.

The judgment is affirmed.