Bailey *v.* Alexander Realty Company, Appellant.

Argued May 28, 1941. Before SCHAFFER, C. J., MAXEY, DREW, LINN, STERN, PATTERSON and PARKER, JJ.

*W. E. Shissler,* with him *John McI. Smith,* for appellant.

*John H. Moody,* with him *Bailey & Rupp,* for appellee.

OPINION BY MR. JUSTICE MAXEY, June 30, 1941:

This is an appeal from a judgment in favor of the plaintiff in an action of trespass. The basic question before us is whether or not the court below should have declared the plaintiff guilty of contributory negligence as a matter of law.*

The statement of claim alleged that the defendant, a Pennsylvania corporation, was on November 15, 1937, the owner of the hotel building located at the southwest corner of Fourth and Market Streets in Harrisburg and was engaged in remodeling and repairing the building, that plaintiff was employed as a carpenter in the repairing of the building, and that in addition he was furnished by the defendant with a room in the building. On the above date after working hours and at about 5: 30 p. m. he entered the building to return to his room. The statement alleged that at the time aforesaid plaintiff "walked to the elevator shaft on the ground floor of the building and, finding the door thereto partly open and no guard in place and believing the elevator lift to be level with the floor where he was standing, walked through the opening, and suddenly and without warning fell to the bottom of the elevator shaft, sustaining thereby serious and permanent injuries." The statement also alleged that the

---

* At the time this action was brought the plaintiff was a minor, but prior to the trial of the case he became of age and thereupon the caption of the action was amended so that he prosecuted the action in his own right.

defendant failed "to provide or maintain good, sufficient and adequate light in the area and vicinity of the elevator shaft so as to properly illuminate and bring into view the actual condition of the elevator shaft at the time the plaintiff fell therein." After trial the jury awarded plaintiff $7,000. The motion of the defendant for judgment n. o. v. was refused and an order was made granting the plaintiff the option to remit the sum of $1,745.25 or suffer a re-trial of the case because of the excessiveness of the verdict. The plaintiff then filed a remittitur and judgment was entered in his behalf for $5,254.75. This appeal was then taken.

The circumstances immediately preceding plaintiff's falling through the elevator shaft were, according to his testimony, as follows: "There were steps back in the left-hand corner of the building, back pretty far, and the elevator shaft was over to the right. So I went in, and there were lights back towards the steps, but there were no direct lights in the direction of the elevator shaft. It was dark. It was five-thirty. I went to the elevator shaft and pulled the latch and the door opened. I expected the elevator to be there. It was automatic, and the elevator was supposed to be there. . . . So I opened the elevator door and expected to step into the elevator and turn on the light on the top—they had the light out—and I stepped to the basement, a distance of seventeen feet. That is the last I recall until I came to in the hospital. . . . There were no direct lights to the elevator shaft. It was very dim and shadowy. Some of the lights were turned out, and there was no direct light in the shaft." He was asked on cross-examination: "Do you know whether it was an automatic type elevator? A. The door was automatic." He explained that in order to make the elevator move the operator had to push a button on the inside of the elevator. He described the mechanism of the latch as follows: "In that elevator shaft it was so it could be opened when the ele-

vator was there. When it [the elevator] was away it was supposed to be shut." He then claimed that "if the elevator was at the first floor, you would have to open two doors before you get into the carriage," that "you would have to open the lobby door and have to open the carriage door itself." He added that the door inside "was often left open". He was asked: "Then as I understand your testimony, there was no light at or near this elevator door at all on the night of this accident? A. No, or I could have seen into the elevator shaft. Q. How would you describe the condition of the area around the elevator door, as being illuminated or dark? A. It was dark inside the door. . . . Q. Would you say that entrance to the door was dark? A. There were lights outside. I knew where the door was, but to get over it was dark at the elevator door. . . . Q. It was so dark you couldn't see the latch? A. I couldn't see it. There were only shadows" there.

The court below in holding that the plaintiff could not be adjudged guilty of negligence as a matter of law relied on the case of *Douville v. Northeastern Warehouse Co.*, 337 Pa. 188, 10 A. 2d 394, in which we said: "If an elevator shaft is properly lighted, a person who approaches it is charged with the duty of seeing whether or not the elevator door is open when the elevator is not at that floor. . . . On the other hand, a person who approaches an elevator or an elevator shaft in a place so dark that scarcely anything is visible does so at his own risk and if, while thus enveloped in darkness, he is injured by colliding with an object or falling into a hole, he will be adjudged guilty of contributory negligence as a matter of law. . . . The third class of cases is where a person walks in a dim light and has reason to think that an elevator is at the floor when in fact it is not and he uses his best judgment as he proceeds and then meets with an accident. In such a case the question of his contributory negligence is

for the jury: *Murphy v. Bernheim & Sons, Inc.*, 327 Pa. 285, 194 A. 194.".

In the last mentioned case, the plaintiff testified that "the light coming into the elevator [shaft] was diffused light; it was not a bright light, but it shone down the shaft and reached a certain figure, about level with the floor, and seemed to make a shadow with the dust and particles there on the floor, and I took it to be the floor of the elevator. . . . As I took it the floor being there, and no barrier being there, I walked off on what I thought was the floor of the elevator. I fell into the shaft." It must be noted that in this case of *Murphy v. Bernheim & Sons,* the plaintiff was deceived *by his senses,* the condition of the light being such that the mingling "of the shadow with the dust and particles" made him think that he perceived the floor of the elevator when in fact none was there. The plaintiff there used his senses and we therefore held that whether or not he was guilty of negligence was a question for the jury. In the instant case the plaintiff did not use his senses at all; he relied exclusively upon his reasoning powers. He concluded that *because the outer door could be opened,* the elevator must be in position inside the door. If he had exercised his sense of feeling, it would have informed him that the elevator was not there. If he had lighted a match and exercised his sense of sight, his eyes would have told him that the elevator was not there. All animals, including man, must depend primarily upon their senses to warn them of impending danger. For example, when one is about to drive across a railroad, he must not only stop but he must also look with his eyes and listen with his ears. He must do this even if it is a gate-protected crossing and the gates are up. If from that latter fact, he reasons that no train is approaching and a train is in fact approaching and he is injured by it, he cannot escape the imputation of negligence by pleading that he used his reasoning powers. "Self-preservation is the first

law of nature" and no one exhibits normal obedience to that law unless he uses *both* his reasoning power *and* his senses for his own preservation. In the *Murphy* case (supra) we said: "When one is moving in the dark he must proceed with the greatest caution and literally 'feel his way around.'" The instinct of self-preservation impels a man of ordinary prudence to avoid by the vigilant use of all of his faculties, a danger that should obviously be apprehended. In *Murray v. Earl,* 282 Pa. 517, 520, 128 A. 436, this court said: "Where the entrance is dark, it would seem that ordinary care would condemn the act of a person who steps into an elevator shaft, knowing its location, without satisfying himself that the elevator is there."

The grievous error which plaintiff made was in accepting his reasoning faculties as the sole assurer of his safety. In the absence of sufficient light to enable him to see into the shaft he *assumed* that *because* the outer door was movable the elevator must be there. He thus placed improvident reliance on the perfection of the door-locking mechanism and on defendant's supervision of it. No man of common caution will rely for his safety upon the watchfulness of others when his own senses are available to apprise him of likely imminent danger. When an individual *can* assure his own safety by the use of his senses, he *must* do so or abide the consequences of his carelessness.

The test to determine in these elevator shaft cases whether or not one who walks into an open shaft is guilty of negligence as a matter of law is not the degree of darkness prevailing at the opening. There is no rule which says that if a man walks into an open elevator shaft in *semi*-darkness, the question of his negligence must be submitted to the jury. If while in *total* darkness he walks into an open elevator shaft without first "feeling his way", he is in law guilty of negligence. If while in semi-darkness he does not use either his sense of sight or his sense of feeling, as a

guide, but walks into an opening merely *because he assumes* that the elevator is at the floor, he is in law guilty of negligence. If in semi-darkness he uses his sense of sight as carefully as he can and reasonably believes he can "see his way" and if his sense of sight deceives him, he may or may not be guilty of negligence and the question will be for the jury. The law does not require a man to possess perfect vision in a setting of complete visibility before proceeding on his course.

The duty of availing oneself of one's senses, for self-protection can seldom be breached with physical impunity and never with legal sanction. The undisputed facts here present admit of no reasonable deduction save that of the plaintiff's inattentiveness. " 'Negligence is the absence of care according to the circumstances,' and it is always a question for the jury where there is a reasonable doubt, either as to the facts, or inferences of fact to be drawn from the testimony. . . . But when facts constituting negligence are either admitted or conclusively established by undisputed evidence, it is the duty of the court to declare the law applicable thereto": *Gates v. Penna. R. R.*, 154 Pa. 566, 572, 26 A. 598. The rule that a victim cannot recover damages for injuries sustained by him if he could have avoided the injury by the exercise of ordinary care bars this plaintiff's recovery.

Our decision is, of course, without prejudice to plaintiff's right to present a claim under the Workmen's Compensation Law. In such a proceeding the question whether plaintiff was injured in the course of his employment would have to be determined.

The judgment is reversed and is here entered for the defendant.

Mr. Justice DREW dissents.