Gaines, Appellant, *v.* Philadelphia
Transportation Company.

Argued April 22, 1948. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*I. Finkelstein*, with him *Matthew Kramer*, for appellant.

*Harold Scott Baile*, with him *Bernard J. O'Connell*, for appellee.

OPINION BY MR. JUSTICE JONES, July 6, 1948:

Haverford Avenue and 42nd Street, Philadelphia, intersect at right angles, Haverford Avenue running east and west, and 42nd Street, north and south. In the middle of Haverford Avenue there is a double set of street car tracks, having an overall width of sixteen and a half

feet; on either side of the tracks, there is a cartway of fifteen feet, for a total width for the avenue of forty-six and a half feet from curb to curb. 42nd Street is thirty-three feet between curbs. The buildings on both streets are set back fourteen feet from the respective curbs. At the time of the matter here involved, Haverford Avenue was a full stop for traffic approaching on 42nd Street and appropriate stop signs, in accordance with The Vehicle Code, were erected, viz., one (facing south on 42nd Street) at the southeast corner of the intersection and another (facing north on 42nd Street) at the diagonally opposite (northwest) corner of the intersecting streets.

About 11:55 p. m. on the night of July 1, 1944, a passenger automobile, proceeding northwardly on 42nd Street, and a street car, going west on Haverford Avenue, collided in the intersection, the automobile striking the street car on the left-hand side just back of the front. The force of the impact caused the street car to jump the track; and, in so. doing, it pulled down the overhead power line. After jumping the track, the street car ran (without power) diagonally to the right over the cartway and struck the rear of a coupe automobile parked along the north curb of Haverford Avenue at a point twenty-five feet west of the 42nd Street line. The plaintiff, innocent of what was transpiring, was sitting in the parked automobile on the right-hand side of the seat. The momentum imparted by the street car turned the parked automobile around, hurled it (in reverse direction) across the street and threw the plaintiff to the ground, causing the injuries for which this suit was brought. After striking and displacing the parked automobile, the street car jumped the curb and continued on its course diagonally along the fourteen foot sidewalk until it imbedded its front end in a building on the north side of Haverford Avenue ninety-five feet from the point of collision.

The plaintiff sued the traction company for damages on the ground that negligence on the part of its motorman was a proximate cause of his injuries. By agreement of the parties, the case was heard by the court without a jury; and, at the conclusion of the evidence for the plaintiff, the court entered a compulsory nonsuit which it later refused to take off. This appeal followed. We may say, in passing, that the practice, in general, of granting nonsuits in actions at law heard by judges without juries is not to be commended. Error, ofttimes due to the trial court's failure to view the evidence for the plaintiff as favorably as the procedural situation requires, would largely be avoided if, instead, the court proceeded to a full hearing of the evidence for both sides and then found the facts, which findings would forthwith have the weight of a jury's verdict. The resultant judgment would be reviewable on a more conclusive factual basis.

A nonsuit may be properly entered only where the determining factors are so clearly established that reasonable men could not differ as to the finality of their evidentiary import. Mr. Justice MOSCHZISKER graphically expressed the pertinent rule in *Virgilio v. Walker & Brehm*, 254 Pa. 241, 244-245, 98 A. 815, where, speaking for this Court, he said that,—"In a case of this character [trespass for damages for personal injury], a nonsuit can be entered only when it is inconceivable, on any reasonable hypothesis, that a mind desiring solely to reach a just and proper conclusion in accordance with the relevant governing principles of law, after viewing the evidence in the light most advantageous to the plaintiff, could determine in his favor the controlling issues involved". The same guiding principle has been frequently stated in simpler and more concise form, e. g., a nonsuit can be entered only in a clear case; if there is any doubt as to the inferences to be drawn from the evidence, the case is for the jury; the facts and inferences must lean to the *one* conclusion of the defend-

ant's freedom from fault. See *Ehrlich v. United States Fidelity and Guaranty Company*, 356 Pa. 417, 423, 51 A. 2d 794; *Stinson v. Smith*, 329 Pa. 177, 181, 196 A. 843; *Rhoads v. Herbert*, 298 Pa. 522, 524, 148 A. 693; *Frank v. Cohen*, 288 Pa. 221, 225, 135 A. 624; and *Jester v. Philadelphia, Baltimore & Washington R. R. Co.*, 267 Pa. 10, 13, 109 A. 774.

With these principles in mind and viewing the evidence and all inferences, reasonably deducible therefrom, in the plaintiff's favor, it is impossible to see how it could be said *as a matter of law* that the defendant company was free from causative negligence. We are not now concerned with the possible fault of the driver or occupants of the automobile traveling on 42nd Street. For present purposes their negligence may be assumed. Our sole inquiry is whether there is evidence in the case from which a jury might properly find that the motorman failed to exercise the degree of care required of him in the circumstances and, if he did so fail, whether his negligence contributed to the infliction of the plaintiff's injuries.

The plaintiff produced two disinterested eyewitnesses, a man and a woman, each of whom was standing at the time of the collision on the sidewalk at the northeast corner of the intersection. In addition to the facts already mentioned, relative to the course and momentum of the street car following the collision, the proffered evidence would support the following further findings. When the street car was still back (some eight feet) from the east building line of 42nd Street, the automobile had reached the curb on the south side of Haverford Avenue. The street car was traveling at a rapid rate of speed. It did not stop at 42nd Street or slacken its speed in any degree upon approaching and entering the intersection. The collision occurred in the middle of the intersection; and both bystanders were aware of its imminence before the street car entered the intersection. The crossing, moreover, was a dan-

gerous one. In these circumstances the question of the motorman's negligence was for the jury. Certainly, the evidence was not such that the court could summarily answer that question as a matter of law: see *Cunningham v. Pennsylvania Railroad Company*, 352 Pa. 571, 575, 43 A. 2d 825, and cases there cited.

In entering the intersection, the care required of the motorman was that he have the street car at such speed and under such control as to be able to avoid an accident with cross traffic if at all possible: see *Galliano v. East Penn Electric Co.*, 303 Pa. 498, 503, 154 A. 805. In *Scholl v. Philadelphia Suburban Transportation Company*, 356 Pa. 217, 221, 51 A. 2d 732, we said that, —"At a dangerous public crossing the operator of a trolley car (even though it has a superior right of way) owes a duty of exercising a high degree of care towards persons reasonably to be expected to appear at the crossing, such as pedestrians, motorists and other travellers": citing *Kuhns v. Conestoga Traction Co.*, 290 Pa. 303, 306-307, 138 A. 838, and *Schaeffer v. Reading Transit Co.*, 302 Pa. 220, 222-223, 153 A. 323. And, "While trolley cars are not held to the strict rule of control that attaches to a moving automobile at public crossings, they must exercise a certain control to the extent of slackening their speed so as to aid others under stricter control to avoid accidents": *Kilpatrick v. Philadelphia Rapid Transit Co.*, 290 Pa. 288, 292, 138 A. 830. Here, the street car went into the intersection without a "slackening" of its speed.

That the speed of the street car was excessive in the circumstances was also properly inferable from the momentum it exhibited after it left the tracks. In the *Kuhns* case, supra, where it was noted that "the exact speed of the car was not shown, or that it was excessive," this Court said (p. 307),—"But running a car there at such speed that it could not be stopped for the distance above mentioned, or even one hundred feet, as estimated by another witness, is some evidence of negli-

gence . . . which, with the apparent lack of any effort to check the speed of the car, before the accident, were matters for the jury . . .". See also *Scholl* case, supra, at pp. 222, 223, and *Muehlhof v. Reading Co.*, 309 Pa. 17, 23, 162 A. 827.

The street car's derailment was a natural consequence of its meeting with an obstacle at a high rate of speed. It is by no means exceptional for a locomotive or other railway vehicle, traveling at high speed, to be derailed by the impediment or obstruction offered by a colliding object of relatively small proportions: cf. *Jones v. Williams,* 358 Pa. 559, 563, 58 A. 2d 57. Once off the tracks, as a result of the motorman's negligence, the uncontrolled street car was a proximate cause of the plaintiff's injury.

The appellant further complains that the court below erroneously justified its refusal to remove the nonsuit on the basis of alleged facts not of record. It is true, as the appellant points out, that the testimony does not identify the occupants of the automobile involved in the collision. Nor was it established by evidence that they were either intoxicated or on a joy ride or that the automobile had been stolen. The error was no doubt inadvertent and is not likely to be repeated.

Judgment reversed with a procedendo.