The plaintiff sued the defendant Rulon to recover damages for injuries suffered when he fell through a hole left by an opened trap door in the floor of a restaurant owned and operated by the defendant. Rulon brought upon the record, as additional defendants, alleged independent contractors, doing business as a partnership, whose employee, the defendant charged, had opened the trap door and had negligently failed to close it or to guard the opening. One of the partners answered and averred that the partnership had been dissolved prior to the accident; he impleaded, as an additional defendant, his former partner who, he averred, had succeeded to the partnership business and was the employer of the allegedly negligent workman. This additional defendant also answered and the case went to trial. At the close of the plaintiff's case, the learned trial judge entered a compulsory nonsuit as to all defendants. The reason then assigned by the court for its action was that the plaintiff had been guilty of contributory negligence as a matter of law. Later, in denying the plaintiff's motion to remove the nonsuit, the court en banc confirmed the action of the trial judge on the same ground but added as a further supporting reason that the plaintiff had failed to prove the defendant negligent.
In passing upon the lower court's entry of the nonsuit, only the facts favorable to the plaintiff and the inferences to be deduced therefrom are to be considered unless, of course, the plaintiff, by his own unmistakable testimony, put himself out of court. It is only in a clear case, concerning whose facts the minds of reasonable men cannot honestly differ, that the entry of a compulsory nonsuit is ever justified: see Gaines v.Philadelphia Transportation Company, 359 Pa. 610, 613-614,59 A.2d 916, and cases there cited. On that basis, the following are the presently material facts. *Page 587 
About noon on January 12, 1948, the plaintiff walked from his place of employment in West Chester, Pennsylvania, to the defendant's restaurant (less than a square away) to get his lunch as had been his custom for about a year. He was sixty-nine years old at the time and an employee at a neighboring hotel where he worked "behind the desk" and "cleaning and sweeping." The restaurant was located at the northwest corner of Market and Walnut Streets and fronted twenty-five feet on Market Street; it extended back fifty feet along Walnut Street which runs north and south, crossing Market at right angles which, accordingly, runs east and west. There was an entrance door into the restaurant from each of the streets, toward the corner. The plaintiff entered by the Market Street door. On the right side of the room, as you entered from Market Street, a lunch counter stood parallel with the Walnut Street wall, about six or seven feet out from the wall; and, on the near side of the counter, there were stools for the use of patrons. Signs specifying the food for the day, with prices, were hung on the wall back of the counter. Along the directly opposite (or west) wall were booths with hooks on which patrons could hang their coats and hats. About three feet inside the Market Street entrance and slightly to the left there was a music box three feet square and five and one-half feet high; and two feet beyond the music box, there was a trap door in the floor which extended toward the rear of the restaurant. The trap door was eight feet long and three feet wide and lay longitudinally with the lunch counter and about six feet out from it. Looking directly to the rear of the restaurant from the Market Street entrance, the edge of the trap door, on the lunch counter side, extended out six inches beyond the line of the music box. The trap door was hinged on its long dimension away from the lunch counter and, when *Page 588 
opened fully, it lay back flat on the floor toward the booths.
The plaintiff, upon entering the restaurant, walked back between the lunch counter and the music box and, when past the music box, looked up to read the food signs on the wall. Turning to his left to go hang up his coat and hat on a hook at the booths, he stepped into the opening in the floor, left by the opened trap door, and was precipitated into the basement below, receiving the injuries for which this suit was brought. The plaintiff had never before seen the trap door open although he had been an almost daily patron of the restaurant for a year. At the time here involved, the trap door was open and lying back flat on the floor; the opening was unguarded and without protecting barrier or warning sign. The plaintiff did not see any light showing through the hole in the floor before he stepped into it.
Whether the defendant Rulon was guilty of negligence was a matter for the jury to determine under the evidence in the case. He ". . . owed to the plaintiff the affirmative duty of keeping his premises reasonably safe for business visitors, such as plaintiff, and of giving warning of any failure to maintain them in that condition:" Kulka v. Nemirovsky, 314 Pa. 134,139, 170 A. 261; see cases there cited; also, Vetter v.Great Atlantic Pacific Tea Company, 322 Pa. 449, 454,185 A. 613; and Christman v. Segal, 143 Pa. Super. 87, 89,17 A.2d 676. "It is certainly true," as was said in Bloomer v.Snellenburg, 221 Pa. 25, 27, 69 A. 1124, "that where the owner or occupier of premises, in the prosecution of his own purposes, invites another to come upon the premises, he cannot with impunity expose the visitor to an unreasonable risk of any sort, as, for example, to an open hole in a passageway . . ." (Emphasis supplied). A condition of "so pronounced a character" is sufficient to carry a case to the jury on the question of the owner's or operator's negligence. So far as knowledge *Page 589 
of the dangerous condition is important, the owner had such in the present instance. The mere existence of a trap door in a floor intended to be trodden by business invitees was, of itself, sufficient to charge the owner of the business with knowledge of the potential danger inherent in even an occasional use of the trap door during business hours. But, inferentially at least (and the plaintiff is entitled to the inference), the defendant had actual knowledge of the existing dangerous condition. Either he or an authorized employee was present in the restaurant while the trap door was open and the opening unguarded. The restaurant's business was being conducted as usual; the plaintiff had just been allowed to enter for a business purpose; and there was at least one other customer, — the man at the lunch counter whose greeting the plaintiff had acknowledged. Thus, the facts well justify the inference that, at the time in question, either the defendant, or one representing him, was in actual charge of the restaurant. The defendant was, therefore, under a legal duty to see that the opening in the floor was guarded or that other warning of the danger was given to visitors lawfully upon the premises. It cannot be said, as a matter of law, that the defendant was not guilty of a breach of his duty in the circumstances.
The case of McCreery v. Westmoreland Farm Bureau, 357 Pa. 567,55 A.2d 399, which the appellee cites, is not presently pertinent. There, the dangerous instrumentality, at its place of installation, was an essential part of the owner's grinding business; its mechanism had to be left open in order to receive the grain to be ground; its noise gave warning of operating mechanical parts; the invitation to a business visitor did not include the right to explore the hidden mechanism; and only an imprudent meddler would do so blindly with his bare hand, below the floor level, under the mound of grain lying in the hopper. Here, the *Page 590 
patrons of the restaurant were regularly invited to walk over the very portion of the floor where the trap door existed; and there is nothing in the case to show that the trap door had to be maintained where it was located; that it was essential to the operation of the business; or that it had to be open and left unguarded at the time here involved. The case ofBurckhalter v. F. W. Woolworth Company, 340 Pa. 300,16 A.2d 716, also cited by the court below in exculpation of the defendant, is to be similarly distinguished. There, the allegedly offending instrumentality was, likewise, a congruous business installation.
The question whether the plaintiff exercised the degree of care required of him in the circumstances was likewise for the jury. He was entitled to rely on the defendant's performance of his affirmative duty in the premises: see Vetter v. GreatAtlantic Pacific Tea Company, supra, at p. 454 and cases there cited. And, by like token, the plaintiff's failure to anticipate negligence on the part of the defendant in such regard cannot be used by indirection to defeat his claim for damages for injuries sustained as a result of such negligence. See Adams v. Fields, 308 Pa. 301, 305, 162 A. 177, and cases there cited. Nor do the facts, themselves, present such an unmistakable showing of fault on the plaintiff's part as to justify a court in declaring, as a matter of law, that he failed to use reasonable care for his own safety.
The opening in the floor, while not entirely hidden, was largely obscured from the plaintiff's view by the music box, as he walked back between the music box and the lunch counter. Situated as he then was, it would not be reasonable to require that he bestow upon the placing of his feet in moving forward on the restaurant's floor the same degree of concern as would properly be required of him on a public sidewalk or highway:Bloomer v. Snellenburg, supra, at p. 27. Furthermore, the food signs placed by the proprietor on the wall back of the *Page 591 
lunch counter for the relevant and timely information of entering customers caught his attention. His glancing up to read them as he walked along the counter, before turning left, cannot arbitrarily be said to have been unwarranted:Bloomer v. Snellenburg, cit. supra. If, however, by looking up at the signs rather than at the floor, he was, at the time, not using the caution expected of a reasonably prudent person in such circumstances, the question presented was one of fact for the jury and not of law for the court: Bloomer v. Snellenburg, supra, p. 28. Compare, also, Subasky v. The Great Atlantic Pacific Tea Company, 161 Pa. Super. 90, 93, 53 A.2d 840, where it was recognized, on the authority of Bloomer v.Snellenburg that "In a department store, goods, displayed attractively for the very purpose of catching the eye, may excuse one from noting an unguarded obstruction on the floor of the aisle in front of him." However, the principle was not applied in the Subasky case, not because the allegedly distracting thing was not in a department store, as the appellee seeks to distinguish the case, but because the reputed distraction consisted of no more than "An ordinary display of oranges and grapefruit in a self-service store . . . ." The distinction intended in the Subasky case rests in the degree of the display's eye-catching quality. Such being the case, it could hardly be said, as a matter of law, that the bill of fare for the day emblazoned on the wall of a public eating house is not a sufficient attention-arrester to excuse an invitee for having looked up from where he was about to take his next step.
The appellee lays great stress on the fact that the plaintiff freely conceded that, had he looked toward the opening just before he turned left and stepped into it, he would have seen the dangerous condition and been able to avoid falling into the basement. While the plaintiff's frank admission attests his veracity, it does not serve to bar conclusively his right of recovery if, in fact, *Page 592 
he was not blamable in the circumstances for not having taken a further look. Nor are cases such as Bartek v. Grossman,356 Pa. 522, 52 A.2d 209, and Bailey v. Alexander Realty Company,342 Pa. 362, 20 A.2d 754, presently germane to show that the plaintiff was contributorily negligent. In each of those cases one trusting to his own or to another's judgment, rather than to his eyesight, went forward in the dark and fell to his injury. This is not a case of the plaintiff's not having been able to see where he was going but, rather, of his not having seen what lay before him because of the temporary diversion of his sight by the owner of the business who, he had a right to assume, had provided safe attendant conditions. Likewise, the cases that turn on the obviousness of the danger or "thoughtless inattention" to surroundings (e.g., Rogers v. MaxAzen, Inc., 340 Pa. 328, 16 A.2d 529; Walker v. Broad andWalnut Corporation, 320 Pa. 504, 182 A. 643; or Ziegler v.Western Union Telegraph Company, 319 Pa. 274, 179 A. 45) are not here controlling. The present material issue is whether the plaintiff's failure to see the opening in the floor in time to avoid falling through it was excusable in the circumstances, — a matter for a jury to solve.
The judgment is reversed with a procedendo.