Druding *v.* Philadelphia, Appellant.

Argued April 22, 1953. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ. Appeal, No. 136,

reargument refused June 26, 1953.

*I. Jerome Stern,* Assistant City Solicitor, with him *James Francis Ryan,* Assistant City Solicitor, and *Abraham L. Freedman,* City Solicitor, for appellant.

*Leonard Orloff,* for appellee.

OPINION BY MR. JUSTICE BELL, May 27, 1953:

Plaintiff sued in trespass for personal injuries; recovered a verdict in the amount of $12,500; the defendant's motion for judgment n.o.v. was dismissed by the

Court en banc; judgment was entered on the verdict in favor of plaintiff, and from such judgment defendant appeals.

On the evening of July 24, 1951, at approximately 8 p.m., plaintiff, aged 42, went to the Greenwich Recreation Center at 3rd and Shunk Streets, Philadelphia, where the City maintained and operated a public swimming pool. It was a very hot night and Druding asked the attendant whether he could take a swim. After the attendant told him that he could, plaintiff checked his valuables and then took a cold shower for about 5 minutes. The pool was 80 feet long and 30 feet wide. Plaintiff, according to his own testimony—and of course on a question of judgment n.o.v. he must be given the benefit of all testimony favorable to him and all reasonable inferences therefrom: *McDonald v. Ferrebee*, 366 Pa. 543, 79 A. 2d 232—came out of the shower room and seeing one end of the pool marked "Deep End" walked 8 or 10 feet until he reached a point approximately 20 feet from the deep end of the pool. The water was a greenish color—his witnesses said "dark greenish color, just ordinary city water"—and there were "a lot of fellows in there, jumping in and jumping out" "and playing tag in the water." Plaintiff *looked* before he dove "to see that no one was in front of me" and hit his head and broke his neck on the bottom of the pool. He testified that the water at that point was about 3½ feet below the edge of the pool and was only 2 feet deep. The water came up to the knee or below the knee. The lifeguard was draining the pool that evening, although about 65 to 100 people were still using it. No sign or warning was given to persons that the pool was being drained. Plaintiff had not been in a swimming pool for approximately 26 years.

Was plaintiff guilty of contributory negligence as a matter of law? We have regretfully come to the conclusion that he was.

Plaintiff was an invitee at the swimming pool and the City owed him the duty of reasonable care. However, as Mr. Justice JONES said in *McCreery v. Westmoreland Farm Bureau,* 357 Pa. 567, 570, 55 A. 2d 399: "There is no duty, however, upon the possessor of land to warn or guard a business invitee against a danger that is obvious."

"No person is required to take extraordinary precautions to save adults in apparent possession of their reasoning faculties from the consequences of their own inattentiveness and carelessness. . . . 'Everyone has a right to proceed upon the assumption that those to whom he owes a duty of care are normal in every respect and prepared on their part to exercise the care of prudent persons generally' ": *Jefferson v. Y.M.C.A.,* 354 Pa. 563, 567, 47 A. 2d 653.

"One who heedlessly walks into a place which he knows or should know may be dangerous takes the chance of the result and must abide by the consequences: Jones v. Counties Gas & Elec. Co., 289 Pa. 128": *McCann v. Philadelphia Fairfax Corporation,* 344 Pa. 636, 640, 26 A. 2d 540. See to the same effect: *Miller v. Exeter Borough,* 366 Pa. 336, 340, 77 A. 2d 395.

"What this court stated in Bailey v. Alexander Realty Co., 342 Pa. 362, 20 A. 2d 754, applies to the instant case: '. . . When an individual can assure his own safety by the use of his senses, he must do so or abide the consequences of his carelessness . . . The duty of availing oneself of one's senses, for self-protection can seldom be breached with physical impunity and never with legal sanction . . . The rule that a victim cannot recover damages for injuries sustained by him if he could have avoided the injury by the exercise of ordinary care bars this plaintiff's recovery:' " *Bartek v. Grossman,* 356 Pa. 522, 525, 52 A. 2d 209.

"A person may not recover for injuries which are received as a result of a failure on his part to observe

and avoid an obvious condition which ordinary care for his own safety would have disclosed": *Boock v. Acme Markets, Inc.,* 347 Pa. 501, 503, 32 A. 2d 759; *Rogers v. Max Azen, Inc.,* 340 Pa. 328, 16 A. 2d 529.

In the instant case plaintiff saw or should have seen that the water was more than 3 feet below the top of the pool; that boys were running and playing tag in the pool with water only up to their ankles; and that at the place where plaintiff dived, people were standing in the pool with the water around or below their knees. Where a person dives into a pool at a point where the water is only up to a bather's knees and fails to look or if he looked fails to notice and avoid such an obvious danger he is guilty of contributory negligence as a matter of law.

In the light of plaintiff's contributory negligence, it is unnecessary for us to decide whether there was sufficient evidence of defendant's negligence to take the case to the jury.

The judgment is reversed and judgment n.o.v. is here entered in favor of the defendant.

---

DISSENTING OPINION BY MR. JUSTICE MUSMANNO:

I am of the opinion that the drastic rules regarding contributory negligence do not apply when the plaintiff is lulled into a false security through the misconduct of the defendant or his representative. If Thomas Druding had walked into the Recreation Center, removed his outer clothing and, without inquiring of anyone, dived into the pool, it could be said that in the process he had disrobed himself of the garment of prudence and therefore could not legally complain of the injuries induced by his own precipitate and heedless action. But the record shows that he exercised reason

and care in anticipation of his swim: "Q. Tell us what happened when you got to the pool? A. I went to the door and I asked the man if I could take a swim. Q. What man? A. The attendant. Q. What did he say? A. He said, 'Yes, sure.' He says, 'You got trunks?' I said, 'No.' He said, 'Well, you got shorts?' I said, 'Yes.' He said, 'Well, that's o.k. Go ahead in.' Q. You went in? A. Yes. Q. What happened after you got inside the Recreation Center? A. I went to the locker. He told me, he said I could take any locker that the door was open and it was empty. So when I came out, he said, 'You got any money or any valuables?' I said 'Sure.' So then he said, 'You better let me hold it for you, because you're liable to get clipped.' Q. That was the same attendant? A. Yes, the same fellow that let me in the door. Q. You checked your money with him? A. That is right. Then he said, 'You got to go under the shower before you go in the pool.' Q. Did you go in the shower? A. Yes, I was under the shower maybe five minutes or so."

Whatever apprehension may have entered the plaintiff's mind when he saw that the surface of the water did not quite reach the rim of the pool was certainly wiped away by the several assurances of the attendant that it was okay to "go ahead in." To "go ahead in" obviously means to proceed as nearly all experienced swimmers do—that is, go in by diving.

If a traveller is assured by the official watchman at a bridge that it is safe to cross over, even though one of the piers seems to be damaged, and then the bridge falls to the traveller's injury, it would be a question for the jury whether the traveller exercised the care of a reasonably prudent man in accepting the assurance of a person whose specific duty it was to protect the safety of the travelling public using that bridge.

Druding had not entered a swimming pool for 26 years and had never visited this one before. When he emerged from the showers he walked some 8 or 10 feet toward the end marked "Deep End," which brought him within 15 feet of the extremity of the pool on the deep side and 65 feet from the extremity which was the shallow end. No one was standing in the water at the spot he mentally aimed at in his prospective dive so that he could not tell by the high water mark on anybody's body that the water at that point was only 2 feet deep. He raised his hands above his head in the approved orthodox diving position and sprang forward into the water which, because of its dark green color, concealed the nearness of the concrete floor beneath.

Another factor which helped to lull the plaintiff into a sense of false security was the fact that the people already in the pool were leaping, swimming and cavorting about, agitating the water into waves, splashings and cascadings. With this lively aqueous movement before his eyes the lowness of the content of the pool would not be as obvious to the plaintiff as it would have been had the water been unruffled by human occupancy.

If Druding had been extra-cautious he might before diving have asked one more question of the attendant who had already assured him it was alright to go in, namely, "Is it alright to dive here?" But I do not believe that, considering all the circumstances his failure to ask that one further question convicted him of contributory negligence as a matter of law.

It also occurs to me that contributory negligence as a matter of law could well be ruled out of this case on account of the wanton misconduct of the defendant's representatives. This pool was open each evening from 7 to 9 o'clock. Only 50 minutes after the pool opened, the manager began to drain it. With one hour and 10

minutes still remaining of bathing time, the defendant's agent proceeded to dismantle the pool by emptying it. By 8:15 o'clock he had already released over one half of the water content without notifying any of the bathers or intending bathers of the rapidly approaching drought.

More than that, while the life-sustaining element of the instrumentality under his part-control was quickly disappearing, the attendant on duty practically persuaded the plaintiff to enter by telling him how he should dress for the swim, where he should check his valuables and how he should prepare for the natatorial recreation by taking a shower first. A life guard standing by saw the plaintiff prepare to dive in and made no effort to stop him or warn him of the danger of a broken neck by plunging head foremost to a concrete floor covered by a mere two feet of yielding liquid.

The conduct on the part of these several agents and employes of the defendant combined to make out a reckless, wanton and wilful disregard of the safety of the public, which can only be characterized as wanton misconduct.

I would affirm the judgment of the court below.